PHOENIX INS. CO. (SCHOLLENBERGER v.). See Case No. 12,476.

PHOENIX INS. CO. (VALE v.). See Case No. 16,811.

PHOENIX INS. CO. (VAN AVERY v.). See Case No. 16,829.

PHOENIX IRON CO. (KEYSTONE BRIDGE CO. v.). See Case No. 7,751.

PHOENIX MUT. LIFE INS. CO. (BROOKS v.). See Case No. 1,960.

PHOENIX MUT. LIFE INS. CO. (CONVER v.). See Case No. 3,143.

PHOENIX MUT. LIFE INS. CO. (SINCLAIR v.). See Case No. 12,896.

PHOENIX MUT. LIFE INS. CO. (WATTS v.). See Case No. 17,294.

PHOENIX MUT. LIFE INS. CO. (WHITCOMB v.). See Case No. 17,530.

PIATT (BROWN v.). See Case No. 2,026.

## Case No. 11,113.

### PIATT et al. v. McCULLOUGH.

[1 McLean, 69.][1]

Circuit Court, D. Ohio. Dec. Term, 1829.

ATTORNEY AND CLIENT—PRESUMPTION OF AUTHORITY—EXECUTOR—SALE OF LAND—DEFECTIVE TITLE—WILLS—EXECUTION—POWERS.

1. An application may be made by an executor or administrator to the court of common pleas, by attorney, for a sale of real estate.

2. A schedule of the debts must be exhibited, &c. but the application for the sale may be by motion or in writing.

3. Where these proceedings have been carried on by an attorney, the court will presume the sanction of the executor or administrator, unless the contrary appear.

[Cited in Wall v. Bissell, 125 U. S. 390, 8 Sup. Ct. 983.]

4. The court have no power to order a sale except on the application of the executor or administrator.

5. Unless a will is required to be sealed, it is good without seal.

6. Cannot require an instrument to contain any requisites, to its validity, which the statute does not require.

7. A power of attorney not under seal, will not authorize the attorney to execute a deed.

8. A court of chancery will never aid a defective power; but it will relieve from a defective execution of a power.

[Cited in Snow v. Perkins, 2 Mich. 238. Cited in brief in Ferre v. Board of Foreign Missions, 53 Vt. 166.]

9. A bona fide purchaser at an executor's sale of land, where the consideration has been paid, may apply to chancery for a title.

10. The payment of the consideration, the possession and improvement of the property, in such a case, will rebut any presumption, from lapse of time, that there has been an abandonment of the contract.

[This was a bill in equity by the heirs of Piatt and others against the heirs of McCullough.]

Caswell & Starr, for complainants.
Mr. Hammond, for defendants.

OPINION OF THE COURT. This bill is brought to perfect a title arising under a sale of lot 42, in the city of Cincinnati, by an order of court, on the application of the executor of the last will and testament of the ancestor of the defendants. The relief prayed for is resisted on the following grounds: (1) The will not being sealed, is void. (2) It has never been proved. (3) Letters testamentary were never granted. (4) The sale being invalid, equity will not aid. The will bears date the 7th of March, 1803, and was signed, though not sealed, by the testator. He died the same year.

The ordinance of 1787 for the government of the territory north-west of the River Ohio, regulates the descent of real and personal property, which provision was to remain in force until altered by the legislature of the district. And it provides, "that until the governor and judges shall adopt laws as therein after mentioned, estates in the said territory may be devised or bequeathed, by wills in writing, signed and sealed by him or her in whom the estate may be, (being of full age) and attested by three witnesses." On the 1st October, 1795, a "law concerning the probate of wills, written or nuncupative," adopted by the governor and judges from Pennsylvania, took effect. This law provides, "all wills in writing or whereby any lands, tenements, or hereditaments, have been, are, or shall be devised (being proved by two or more credible witnesses upon their solemn oath or affirmation, or by other legal proof in the territory, &c.) shall be good and available in law for the granting, conveying and assuring of the lands or hereditaments thereby given or devised, as well as the goods and chattels thereby bequeathed." This act was in force when the will under consideration was executed, and the ques-

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

tion is presented whether a seal which the ordinance renders essential to the validity of such an instrument, is required under this law. It is contended that the act of 1795 refers wholly to the proof of wills, and does not dispense with the regulation of the ordinance, which requires a will to be signed and sealed by the testator, and that he shall be of full age. By looking into the act of '95 it will be found not to relate wholly to the proof of wills, but was designed to regulate the manner in which they may be made. In the third section it is provided in what manner a verbal will may be made, and how it shall be proved. The first section not only provides how a will in writing shall be proved, but declares that such a bequest shall be valid, both as to real and personal property. This act, therefore, covers the whole ground. It was not designed as amendatory to the ordinance, if indeed it were competent for the governor and judges to amend it.

This provision of the ordinance was designed to be temporary, and was to be abrogated so soon as the governor and judges should adopt laws on the subject. The law of descents was intended to be more permanent, for it was to remain in force until altered by the legislature of the district. The adopted law was a substitute for the provision in the ordinance in relation to wills, and the argument that this construction cannot be given to the act, because its provisions do not extend to all the requisites of the ordinance, is believed not to be sound. Why adopt a law in substitution of the ordinance, if all the provisions of the latter must be retained? The governor and judges had only power to adopt laws from other states, not to legislate. They could not annex a repealing clause, and thereby give a construction as to the extent of the adopted act. But when the power of selection was exercised, the selected law became the law of the territory, and, consequently annulled the temporary regulation of the ordinance on the same subject. The act of '95 requires a will to be in writing, but a seal is not necessary to its validity. Such has been the uniform construction of this law, in the state of Pennsylvania. Such construction is presumed to have been known to the governor and judges at the time the law was adopted. And if this were not the case, the decisions of the courts of Pennsylvania would be adverted to, as the highest authority in settling the construction of this statute. But the language of the act on this point is too plain to admit of doubt. It would do violence to all known rules of construction to annex any forms to an instrument, as essential to its validity, which are not specially required by the statute. As this act has been found to contain adequate provisions to regulate the making, as well as the proof, of wills in the state of Pennsylvania, no very strong argument can be drawn from its presumed defects, as applicable to the territory. The power to make

a will is not touched by this law; it remained where the law had before placed it.

Has the will been sufficiently proved? is the next point for consideration. It appears that the 21st of November, 1803, before two associate judges proof of the execution of the will was attempted to be made. The three witnesses to the will appeared and being sworn stated, that they saw the testator sign, publish and declare the instrument of writing referred to, to be his last will and testament, and that he was of sound mind and memory at the time, and that they subscribed their names as witnesses. Afterwards "on the 7th March, 1804, the witnesses named in the will appeared in open court (three associate judges being present) and were duly sworn as above, that they 'see' (the word used) the testator sign the will as his act and deed," &c. And on the same day the court accepted the renunciation of D. Zeigler, one of the executors named in the will. The will, it seems, was recorded as the law requires; and Reeder, the acting executor, commenced his duties under it.

It is objected that two judges before whom the will was at first attempted to be proved, did not constitute a court for that purpose; as the presence of three judges is necessary. This will not be contested. But it is farther urged that the subsequent proceedings on the 7th March, 1804, do not amount to a probate of the will. That there is no adjudication upon the proof, no establishment of the will. And that there is no room for presumption, as the record shows all that was done. That the record of the proceedings the 7th March as well as on the 21st November, is extremely informal must be admitted. In the certificate of the 7th. there is a reference to the previous proceedings before the two judges, where it is stated, "that the witnesses were sworn as above, and that they saw the testator sign" &c. Taking the whole proceedings together these facts are established. That the witnesses to the will were examined in open court, touching its execution. That one of the executors named in the will relinquished his right of acting under it. That it was recorded as the law requires, and that the acting executor proceeded to discharge his duties, which is shown by his exhibits to the court, who recognized him in his capacity of executor.

These facts can leave no doubt upon the mind, however informal the record may be, that the will was proved to the satisfaction of the court, and ordered to be recorded, and that the rights of the acting executor were fully recognized. This question it must be recollected arises incidentally, and is not made between the heirs and the executor, and, under the circumstances, may not this court presume that all the essential requisites of the law were complied with by the court of probate, though the record be informal? There is nothing to rebut this presumption. All the facts go to strengthen it.

Has not the doctrine of presumption been carried much farther than this, in presuming the existence of matters of record in support of titles under sheriff's sales? If the will had not been satisfactorily proved, could it have been recorded? Would the court have suffered one of the persons named as executor to relinquish his right of acting before the proof of the instrument? Without such proof would they have recognized the acting executor in that capacity? These answers must all be in the negative, and they present a state of facts totally incompatible with any other presumption than the one which is drawn. This court are therefore sustained in the conclusion that the will was proved to the satisfaction of the court of probate, which had exclusive jurisdiction over the subject.

The next objection to be considered is, that letters testamentary were never granted. It is contended that the letters testamentary form the foundation of the executor's authority, and that without them he cannot act. That the fact of his having so acted. cannot be sufficient, and that the grant of letters must be shown by record evidence. The right of the executor to act, it is insisted on the other side, is derived from the will after it has been legally proved and not from any investment of power by the court distinct from the will, and that the letters testamentary are evidence of this right, and also of his having been qualified. If the letters were essential may not their existence be presumed? Or rather does not such a presumption necessarily arise from the other facts in the case. The will has been proved; one of the persons named as executor refuses to act, the other person named takes upon himself the duties of the office, and is recognized in his official character by the court. Could these facts exist, if the court had not granted to Reeder whatever was necessary to authorize him to act as executor? It is not necessary that the letters testamentary should be recorded. and if, in technical language, an award of such letters cannot be found on the record, the proceedings show facts which could not exist, unless such an award had been made, though the entry has been omitted by the clerk, the existence of the letters therefore may well be presumed. Indeed it is enough to establish the authority of the executor, to show that the court in various official acts recognized him as acting in that capacity.

The objections to the sale will be next examined. These are: (1) That personal application to the court for the order of sale was not made by the executor, nor was the sale made by him. (2) That time was given for the payment of the purchase money by Meek, who could have no authority to act in the case. (3) That Wade, who executed the deed to the purchaser as the attorney of the executor. being authorized to act by an instrument not under seal, could not make a valid deed. (4) That the object of the bill being, to aid a defective power, and not a power defectively executed, it must be dismissed.

Before these objections are examined, it may be proper to consider the ground assumed by the complainants' counsel, which is, that between the heirs and an innocent purchaser for a valuable consideration, the court cannot, for any purpose look behind the order of sale. The counsel consider this order as a judgment of the court, which cannot be incidentally touched or examined, but must stand in full force until reversed or opened in the modes provided by law. The court of common pleas, it is contended, have exclusive jurisdiction of the subject; and if the grounds of their judgment in making the order, be examined so as to affect the title of purchasers under the sale, there would be no security in such titles. That with equal propriety may the merits of a judgment, in a case at common law, be collaterally examined and rights acquired under it destroyed. Whilst the correctness of this doctrine is admitted to some extent, it is believed to be laid down in broader terms than can be sustained. It is true that the court of common pleas have exclusive jurisdiction in ordering sales of real estates of deceased persons for the payment of debts; but they can only exercise this jurisdiction in certain cases. If an individual representing himself to be an executor or administrator, when he was not so, should apply to the court and obtain an order for the sale of lands, a purchaser at such a sale could derive no valid title. The power to sell is not derived alone from the order of court, though without such order no sale can be made. The capacity of an executor or administrator must be coupled with the power conferred by the court: and this power must be exercised in pursuance of the statute, to make a legal transfer of the estate. An estate thus sold, divests the heir at law, and transfers to the purchaser all the interest in the land which the deceased had free from the claims of creditors. It is, therefore, essential to show that the court of common pleas had jurisdiction of the case, by exhibiting proof of the capacity in which the person acted, who procured the order of sale, and by whom the sale was made. It is not enough that he be designated in the order, by way of description, as executor or administrator. Such an order. in some respects. if not in all, is considered as a less solemn act of the court than a formal judgment. So far, however, as the judgment of the court is exercised. in deciding upon the propriety of the sale. from the exhibits made, it must be considered as conclusive in a case like the present. although it may afterwards appear that there was personal property sufficient to pay the debts.

The twenty-second section of the act of 1808, which defines the duties of executors

and administrators, provides, "that when it shall appear to the executors of any last will and testament that the personal estate of their testator, is not sufficient to pay and satisfy the demands against said estate, they shall make known the same to the court of common pleas, in convenient time; who, upon satisfactory proof thereof, shall grant to the executor power to proceed and settle up said estate, by selling any or all the real estate of their testator; in the same manner, and under the restrictions, as is provided in the case of intestate estates." In the thirty-second section of the same act it is provided, "that when it shall be made to appear to the satisfaction of the court, that it is necessary to sell real property for the discharge of debts, &c. they shall appoint three disinterested men to view the lands, tenements or hereditaments, to be sold, and return to the court under oath a statement of the value thereof; after which the court shall direct the executor or executors, &c. to proceed to sell, either the whole or a part, as they may think proper, of such real estate, after giving notice of the time and place of sale, &c. and such lands shall be sold to the best advantage, either for cash or on a limited credit."

By the record it appears, that in December term, 1809, of the court of common pleas, a petition was presented, setting forth that the personal property of McCullough's estate was insufficient to pay the debts, and praying that certain lots in the town of Cincinnati might be ordered to be sold, according to the statute. The petition purported to be by the acting executor of the estate, though it was signed by Alexander A. Meek, his attorney in fact. With this petition was exhibited a schedule showing a large amount of debts due by the estate. The petition being read and heard, was granted by the court. And afterwards, "in the term of April, 1810, on motion to the court and an account exhibited for the sale of lot 42, to satisfy demands against the estate of McCullough, deceased, the court grant an order for the sale of said lot 42, containing four acres; and the court appoint three appraisers, &c. who afterwards returned an appraisement under oath; which fixed the value of lot 42 at one hundred dollars."

It is objected that the power to sell in this case was derived exclusively under the statute, that it being a naked power, not coupled with an interest, must be executed in person and not by an attorney. Several cases are cited to sustain this position. 12 Mass. 504; 4 Johns. Ch. 368; Sugd. Powers. 175; 3 East. 410; 1 Ohio, 232; 2 Ohio, 126, 131, 392. The case in 12 Mass. arose under the statute of 1783, in that state, which authorises the courts to grant licenses to executors, &c. to sell the estate of deceased persons, &c. The court in that case on application of the administratrix, ordered a sale of the real estate of the deceased to be made by a third person.

A sale by such person was decided to be void, as the statute did not authorize such appointment. The principle decided in 4 Johns. Ch. is, "that where a power is given to two executors in the will to sell certain lots of land, if, under the circumstances of the times, they should deem it prudent, a sale cannot be made by one of them, though the other authorized his co-executor to act in the case by a power of attorney." This was a case in which the testator reposed a special trust and confidence, in the discretion of both the executors named, and this trust the court decided could not be executed by one of them. In Sugden it is laid down: "Where a power is given, whether over real or personal estate, and whether the execution of it will confer the legal or only equitable right on the appointee, if the power repose a personal trust and confidence in the donee of it, to exercise his own judgment and discretion, he cannot refer the power to the execution of another for, 'delegatus non potest delegare.' Therefore, where a power of sale is given to trustees or executors, they cannot sell by attorney." The case cited from 3 East was where in a marriage settlement there was a proviso, that it should be lawful for the tenant in tail, by deed or instrument in writing, attested by three witnesses, and to be enrolled with the consent in writing of certain trustees to revoke the old, and declare new uses, held that a deed of revocation executed by him and all the trustees in person, except one, and the consent of that one being given by means of a general power of attorney, before made by him to the settler, to consent to any such deed, as he might think proper to make, by virtue of which the deed for and in the name of such trustee was executed, is bad, though duly enrolled. In 1 Ohio, the court decided that a power given by will to executors, to sell land may be executed by one, if the other refuse to act under the will. And that an executor under such a power must sell for money only. The case cited in the 2d of Ohio, denies the right of an administrator with the will annexed in the state of Virginia, to sell lands in this state, under the will, although the administrator was authorized to sell lands by the statute of Virginia.

The cases cited and the whole current of authorities on the subject, go to show, not that the donee of a power cannot in any case execute a deed of appointment by attorney, or any other act, but that he cannot do so where, by the nature of his appointment, a special confidence is reposed in his discretion. In the nature of things he cannot transfer to another this discretion; it can only be exercised by himself, in pursuance of the confidence reposed in him. Had the power to sell the lot in question been derived from the will depending upon the exercise of the discretion of the executor, it would be clear that he could not discharge this duty by attorney. But what is the nature of the agency exercised by Meek, for the executor, in applying

for the order of sale. It is proved that he was a practising attorney in the court at the time he made the application, and it was made in the name of the acting executor. But it is not a matter of course that a rule is ordered, when applied for. An exhibit of the debts due by the estate must be made, and the court on examination determine whether a sale of the real estate is proper and necessary. The interests of the persons concerned depend upon the exercise of a sound discretion by the court, and not by the executor. He is the mere instrument of the law, in presenting the case for the consideration of the court. Here his power ceases until the court shall act. Unless they shall be satisfied on a full examination of the case, that the interests of the heirs as well as the creditors, would be promoted by a sale, the order is not made. If it be made, the land is valued and the sale is directed under certain restrictions. Can this order be applied for by an attorney of the court in the name of the executor. Must the executor apply in person, or is it essential that he should sign a petition to the court. Is any thing more than his sanction to the application required, and will not this be presumed until the contrary appear, where a regular officer of the court makes the application. The circumstance of Meek's having signed the petition as the attorney in fact of the executor, cannot divest him of the other character in which he had a right to act. Is it not the daily practice of courts of probate to recognize the right of an attorney, to appear in the settlement of estates. Are they not heard as to the sufficiency of vouchers on charges made against the estate, or payments made by the executor, on a motion to enlarge the time for a final settlement of legacies, and in short on every question which can arise in the discharge of the duties of an executor or administrator. The law has prescribed no form in which this application shall be made. Where the personal property is insufficient to pay the debts of the estate, the executor is required to make known the same to the court of common pleas, in convenient time, which, upon satisfactory proof thereof, shall grant to the executor power to sell, &c. The proof consists in a schedule of the debts, showing the demands against the estate, and the only means through which they can be paid. This exhibit may be introduced as well by motion, stating the facts, as by a formal petition or application in writing. Whatever may be the mode of application, it may be made by a counsellor of the court under the sanction of the executor, and this sanction will always be presumed, until the contrary appear. More especially would this presumption arise in behalf of an innocent purchaser at the sale, for a full and valuable consideration. Meek, it appears, was the husband of the only daughter of the deceased, to whom one third of the personal property was bequeathed, but no part of the

realty; consequently, it is urged he must have been interested in having the land sold, for the payment of debts. Fraud, it is said, will never be presumed; and, in this case, there is no evidence to impeach the conduct of the attorney. It appears to have been fair and upright.

Proof is adduced showing the fact of the indebtment of the estate, as represented by the schedule when the order of sale was applied for. If fraud were alleged and proved in the obtainment of the order of sale. it would become a question whether it would affect the title of an innocent purchaser at the sale, without notice. Rights innocently acquired, under judgments or decrees fraudulently obtained, are protected. The order of sale being made by the court, and the appraisers who had been appointed having returned their valuation, there were three things to be done to make a legal sale. There was notice to be given, as the statute required; the sale, and the deed to the purchaser to be made. The fact of public notice having been given, seems not to be disputed, and it is admitted that a crier might be appointed to make the sale. The lot was sold, in pursuance of the notice, to the highest and best bidder, for a sum greatly beyond the appraisement. From the time the order for a sale was made until it was actually effected, what act was necessary to be done by the executor which could not be done by his attorney? The order for the valuation was the act of the court. Any one might transmit a copy of this order to the persons appointed, and it became their duty, which was performed, to examine the property and return their appraisement under oath. Notice of sale was given, in pursuance of the statute; a crier sold the lot, and Irwin became the purchaser. There is proof that the executors expressly sanctioned these proceedings. The law gave him no discretion in the case, except that of selling on a credit, where it was believed to be most advantageous to the estate. But it is objected, that time was given by Meek for the payment of the purchase money. It does appear that a short time was given for the payment of the purchase money, on one of the principal creditors of the estate agreeing to wait the same time for the payment of his demand. This arrangement then was the same thing to the estate as if the purchase money had been paid down. It has been paid, and the estate has derived the full benefit of the payment; and there is no pretence that the lot was sold for less than its full value. Is it essential to the validity of such a sale, that the executor should be present when the property was knocked down? The law points out the manner of the sale. and the crier is employed to proclaim the property, in the usual way. There is nothing to be done which depends upon the discretion of the executor, the terms of the sale being fixed, and although in this case Meek under-

took to vary the terms, so as to give a short time for the payment of the money, on such conditions as were as advantageous to the estate as if the money had been paid down; and nearly twenty years having elapsed, the court, on so slight a circumstance, in no way affecting the interest of the parties, or in opposition to the spirit of the statute, cannot declare the sale invalid. The deed executed by Wade to the purchaser was inoperative, because the power of attorney from the executor, under which he acted, was without a seal. This point being clear, it is unnecessary to examine what the effect of the deed would have been, if the attorney had acted under a legal power.

The last objection remains to be considered. It is contended that this is a case where chancery is called to aid a defective power, and not to relieve against accident, or a power defectively executed. No principle is better established than that a court of equity can never interpose its aid in a case where there is a defect of power. It is the province of chancery to carry bona fide contracts into effect, not to make them. Where there is a want of power in either of the contracting parties, over the subject matter of the contract, it can never be specifically enforced by a court of equity. The obligation of a contract must be reciprocal, and its terms must be understood. If therefore, in this case, there was a defect of power in the executor, to transfer the property in question, to the purchaser at the sale, the bill must be dismissed. The deed made by Wade, being inoperative, the case must stand, as it would have stood, had no attempt been made by the executor, after the sale, to execute a conveyance. Irwin, the purchaser, took possession of the lot, and afterwards conveyed it to Longworth, who conveyed it to Maddock, and he to the complainants. A continued possession under the first purchase has been enjoyed, and very valuable improvements have been made on the premises. The present value of the lot, including the improvements, is great. Many years since, the executor deceased; and the question is now presented, whether chancery will aid a purchase, after a lapse of nearly twenty years, made under the circumstances of this case; and standing upon a sale, the consideration having been paid.

The question is not whether the court can aid the defective power of Meek, but whether, if the executor were living, they would decree a conveyance from him, and he being dead, whether they will decree a release from the heirs. Suppose a bill against the executor had been filed shortly after the sale, could relief have been given? What objection could have been made by the executor? The order for the sale had been obtained by his sanction; the lot had been valued and legal notice given, and it was sold, in the usual mode, for a sum exceeding the valuation,

and the money paid. All these steps were taken, if not in the presence of the executor, under his sanction. Could he have objected, or could any one have objected, that the proceedings were illegal, because the sale was made by an agent, and that such a delegation of power could not be made? To what act of the agent could the objection apply? Not to the notice, for that was legally given. Not to the appraisement, for that required no agency. Not to the crier, for it is admitted that a crier might properly be employed to make the sale. A deputy sheriff, who has no right to delegate his authority, may employ an auctioneer to make a sale, as every other officer may do. The objection could not apply to any unfairness in the transaction, or to inadequacy of price. It must have rested, if made at all, on the simple fact, that a short time was given for the payment of the purchase money, without the least prejudice to the estate, and that even this proceeding had been sanctioned by the executor. The purchase money being paid and appropriated to the benefit of the estate, would have obviated this objection, if indeed it could have been considered, at any time, of any force. Suppose Irwin, the purchaser, had refused to pay the purchase money, can any doubt exist that the executor could have recovered it by suit? Could any of the objections urged against the power, or the mode of its execution, have been set up in that case in bar of a recovery? Surely not. And is not the obligation reciprocal? Is it not binding as well on the executor as on the purchaser? Has lapse of time, or the decease of the executor, weakened the right of the purchaser; or interposed a bar to his relief? The continued possession and improvement of the property and the payment of the consideration, forbid any presumption of abandonment of the contract by the purchaser. He has, in fact, been guilty of no laches. By his purchase he is possessed of all the equitable right which McCullough had in the property, at his decease. And this right is exempt from all the claims of the creditors of the estate. In making the sale, the executor acted as the instrument of the law, which constituted him an agent of the estate. He transferred by the sale no right of his own, but the interest which the deceased in his life time, possessed in the property. When, therefore, by mistake or accident, the executor fails to transfer the legal right, no doubt can be entertained that chancery may, by requiring a release from the heirs of their legal right to the property, and they have only a mere legal right, do justice to the purchaser. This will not be aiding a defective power, but carrying into effect a contract fairly made, and which imposed on the parties reciprocal obligations.

THE COURT will decree a release from the defendants, to the premises in question. Costs to be paid by defendants.