## WALL v. BISSELL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF INDIANA.

No. 22. Argued April 12, 13, 1887. — Decided March 19, 1888.

*It seems*, that under the statutes of Indiana an executor named in a will, who has never qualified, or been appointed by the Court of Probate, or taken out letters testamentary, has no power to redeem a mortgage of real estate, either as an executor, or as trustee under the will.

In equity, a mortgage of real estate, made to one of two creditors to secure the payment of a debt due to them jointly, is incident to the debt, and may be released, after the death of the mortgagee, by the surviving creditor; and a release, made in good faith by the survivor, of part of the land from any and all lien by reason of the mortgage, is valid against himself and the representatives of the deceased, although he is in fact executor of the latter, and describes himself as such in the last clause and the signature of the release, and has by law no authority to enter the release as executor, for want of letters testamentary.

THIS was a bill in equity by George P. Bissell against Abraham G. Barnett, his wife, Byron H. Barnett and James W. Barnett his minor sons, his sisters Susan B. Shoaff and Mary Ann Wall and their husbands, Henry J. Rudisill, Oscar A. Simons and John H. Bass, Henry Burgess, Charles A. Zollinger, and the representatives of John J. Kamm, to foreclose mortgages of real estate in Indiana. Answers and cross bills were filed by the various parties, setting up their different interests, and a final decree was rendered for the plaintiff, from which Mr. and Mrs. Wall, Mr. and Mrs. Shoaff, and the two minor sons of Abraham G. Barnett, appealed to this court. The case appeared by the pleadings and proofs to be as follows :

In 1869 Abraham G. Barnett, his brother John H. Barnett, and Newton B. Freeman, were partners in a paper mill, and desired to raise money for the use of the partnership and to pay up Freeman's share of the capital. At the request of the two Barnetts, and of Rudisill (who appears to have been promised an interest in the partnership), Bissell lent to the

two Barnetts the sum of $8000, the whole of which was put into the firm and $5000 of which was credited to Freeman. Pursuant to an agreement then made by the three partners and Rudisill and Bissell, the following instruments were executed:

On July 15, 1869, the two Barnetts executed to Bissell eight bonds for $1000 each, payable in ten years, with interest semiannually, secured by mortgage from John H. Barnett to Bissell of land in the city of Fort Wayne.

On the same day, Rudisill executed to John H. Barnett a bond, reciting that "said Henry J. Rudisill has received from said Barnett the sum of $5000, part of a loan made by J. H. Barnett and Abraham G. Barnett for the sum of $8000 of George P. Bissell, secured by " the bonds and mortgage aforesaid; and conditioned to "pay said sum of $5000 of said bonds, with interest thereon, as it becomes due."

On December 23, 1871, as security for the payment of this bond, Rudisill executed to John H. Barnett a mortgage of land, upon all of which, except a small piece, there existed a prior mortgage, made by Rudisill to his mother to secure the payment of an annuity to her, and now held by Simons and Bass.

On January 23, 1872, John H. Barnett died, leaving a will containing the following provisions:

First. A devise of part of the land, mortgaged by him to Bissell as aforesaid, to Mrs. Wall, with successive remainders to Byron H. Barnett, to his children, and to Abraham G. Barnett.

Second. A devise of the rest of that land to Mrs. Shoaff, with successive remainders to James W. Barnett, to his children, and to Abraham G. Barnett.

Third and Fourth. Devises of other lands to Mrs. Shoaff and to Abraham G. Barnett and his children.

"Fifth. Now, as to my interest in the paper mill and business carried on at the city of Fort Wayne under the name of Freeman & Barnett, which is regarded as one-third in extent of said business effects, real and personal, &c., &c., stock, assets, machinery, dividends, dues, &c., I devise and bequeath,

subject to the conditions and agreements, performed or unperformed, which were named at the time I became a party in interest in said paper business so carried on by and in Freeman & Barnett's name, and which conditions and agreements are known to my brother, A. G. Barnett, I give and bequeath unto my said brother, A. G. Barnett, and to my nephews, James Barnett Wall and Charles W. Wall, sons of my sister, Mary A. Wall, all my interest in the paper mill and business aforesaid, real and personal, or otherwise, so carried on and owned by said Freeman & Barnett: To have and to hold to each of said devisees or legatees, three in number, so named, one full third of my said interest in said paper business, mill, &c. The sole control of the respective interests of said James B. and Charles W. Wall shall be under the control of my brother, A. G. Barnett, until said James B. shall reach the age of twenty-five years. The profits arising out of said interest so bequeathed to said Charles and James B. respectively shall be at reasonable periods each year paid said legatees respectively by said Barnett, or by any other person who may be authorized to control said interest in the progress of said business, by law or otherwise. And I hereby give the said A. G. Barnett the right to sell said interests of said Charles and James B., if he shall deem such sale expedient for the best interests of said Charles and James, he, the said A. G. Barnett, first giving said Charles and James security for faithfully accounting to them for the proceeds of said sale; or if he shall desire to buy said interests, or either of them, before either shall be of age, then some third party shall qualify as guardian, and proceed to sell the same to said A. G. Barnett under order and authority of law.

"Sixth. I name my brother, A. G. Barnett, my executor, to act himself, or jointly with one he may choose; if acting alone, then he shall and may do so without bond as such executor, but if acting with another, both shall give bond and take out letters testamentary and proceed according to law; but if he shall act alone, then, as executor, he shall have authority under this will to proceed as if he had letters testamentary to execute the trusts devolved on him as executor, as also those

which may incidentally arise in the execution of this trust as executor, but not any others arising out of a different relation, such as trustee or guardian of some of the parties named herein or of some of the trust funds named hereinbefore. He shall have power to proceed to collect all debts, judgments, or choses in action, due me at my death, all rents due me at my death, of any and all my real estate, except the homestead, and to have control of and dispose of all my personal property, moneys and effects, reducing them to availability, and to collect all rents on the lots devised respectively, located in the city of Fort Wayne, until such rents and the reasonable use of the whole homestead place, including that devised to Mrs. Susan Shoaff and to himself, until such funds so arising from rents, use of homestead, moneys, personal property, &c., shall be enough to pay my debts, funeral expenses, debts of last illness, and to purchase a lot in Lindenwood cemetery, properly and fairly improve it, pay for exhuming the remains of my father and mother, their interment, and the erection of a monument suitable to their condition in life in said lot, and this shall be done speedily as the nature of the business shall allow, after which the devisees respectively herein lastly named, and incidentally referred to, shall control said property as the same is intended in the respective clauses wherein said property is devised."

On February 7, 1872, the will was duly admitted to probate, on the testimony of the subscribing witnesses, in a court of the State of Indiana.

Abraham G. Barnett never qualified or gave bond as executor, as required by the statutes of Indiana, and the court of probate never made any order appointing him executor, or directing letters testamentary to issue, and no such letters were ever issued. But he assumed to act as executor, and as such took control of the real and personal property, collected the rents of the real estate for some months, (after which he turned it over to the devisees,) paid the testator's debts and funeral expenses, purchased a burial lot, removed the remains of the testator's father and mother to it, and erected a monument upon it. The other devisees knew of all these acts, and

made no objection, supposing him to be authorized by the will to do them.

On January 23, 1875, Rudisill sold and conveyed by warranty deed to Burgess, Zollinger and Kamm part of the land included in the mortgage from him to John H. Barnett, and in the annuity mortgage to his mother; she released from her mortgage this part of the land; and Abraham G. Barnett executed, on the margin of the record from Rudisill to John H. Barnett, a release of the same part, in the following words:

"I hereby release from any and all lien by reason of this mortgage the following of the premises herein described : All that part of S. E. ¼ of sec. 35, t'p 31, R. 12 East, this day conveyed by Henry J. Rudisill to H. Burgess, Charles A. Zollinger, and J. J. Kamm. Witness my hand and seal as such executor, January 23, 1875.

"ABRAHAM G. BARNETT, [SEAL.]
"Executor of the Estate of John H. Barnett, deceased."

On the same day, and as part of the same transaction, Rudisill executed to "Abraham G. Barnett, as executor of the estate of John H. Barnett, deceased," a mortgage of other lands, partly included also in the annuity mortgage. All the parties to this transaction acted in good faith. But the transaction was not shown to have been known to the devisees until about the time of the beginning of this suit, or to have ever been assented to by them.

The bill prayed for a foreclosure of the mortgages from John H. Barnett to the plaintiff, and from Rudisill to John H. Barnett, or, if the court should hold the release of the latter good, then for a foreclosure of the mortgage from Rudisill to Abraham G. Barnett.

The Circuit Court decreed that the release was valid, and that the title in the land so released be quieted in the present holders as against all other parties to this suit, and that the various parcels of land be sold and applied to the payment of the debts secured by the several mortgages in an order not objected to by the appellants, supposing the release to be valid, which they denied.

*Mr. L. M. Ninde* for appellants.

*Mr. R. S. Taylor* for appellees Simons, Bass, Hoffmeister, McCurdy, and Hattersley.

*Mr. S. R. Alden* for appellees Burgess and Kamms.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

The principal question in this case is the validity of the release, executed by Abraham G. Barnett, of the mortgage from Henry J. Rudisill to John H. Barnett. By the law of Indiana, a mortgage creates only a lien to secure the mortgage debt, leaving the legal title of the land in the mortgagor. *Fletcher* v. *Holmes*, 32 Indiana, 497.

It was argued for the appellees that this release was valid, considering Abraham G. Barnett in any one of three capacities: 1st. As executor of the will of John H. Barnett. 2d. As trustee under that will. 3d. As surviving joint owner, in equity, of the bond and mortgage executed by Rudisill to John H. Barnett to secure the payment of a debt due to John H. Barnett and Abraham G. Barnett jointly.

1. The title of an executor in the personal property of his testator, being derived from the will, doubtless vests in him from the moment of the testator's death. *Dixon* v. *Ramsay*, 3 Cranch, 319, 323; *Hill* v. *Tucker*, 13 How. 458, 466. At common law, he might, before proving the will in the Probate Court, not only take possession of the property, but sell or dispose of it, pay debts of the estate, receive or release debts owing to it, bring actions for property which was in the testator's actual possession, and do almost any other acts incident to his office, except that he could not maintain any other actions without producing a copy of the probate and letters testamentary at the trial. 1 Williams on Executors (7th ed.) 293, 302, 303, 629.

But the statutes of Indiana provide that whenever any will shall have been admitted to probate, letters testamentary shall be issued to the persons named therein as executors (being

competent by law to serve as such) who shall qualify; and further provide as follows:

" SEC. 3. Every person named in the will as executor, who shall qualify and give bond, shall be named in such letters, and every person not thus named shall be deemed superseded.

" SEC. 4. Any person who is appointed executor, who shall renounce his trust in writing filed with the clerk, or who shall fail to qualify and give bond within twenty days after probate of such will, shall be deemed to have renounced such appointment, and such letters shall issue to any other person named in the will, capable and willing to accept such trust.

" SEC. 5. No executor named in the will shall interfere with the estate intrusted to him, further than to preserve the same, until the issuing of letters; but for that purpose he may prosecute any suit to prevent the loss of any part thereof."

" SEC. 19. Every person appointed executor, administrator with the will annexed, or administrator, before receiving letters, shall execute a separate bond," with sureties, " in a penalty payable to the State of Indiana, of not less than double the value of the personal estate to be administered, conditioned that he will faithfully discharge his duties as such executor or administrator, and shall take and subscribe an oath or affirmation that he will faithfully discharge the duties of his trust according to law; " and the bond, as well as the oath or affirmation, is required to be recorded.   2 Gavin & Hord's Stat. 484, 489, 490, 491;  Indiana Rev. Stat. 1881, §§ 2222–2225, 2242, 2243.

These statutes clearly manifest the intent of the legislature that, although the personal property shall vest from the death of the testator in the executor named in his will, yet, in order to secure the interests of creditors and of legatees, every executor shall give bond and take out letters testamentary before he can do any act as executor, except such as may be necessary to preserve the property and prevent the loss of any part of it. The prohibition is absolute that, except for that purpose, " no executor shall interfere with the estate" until the issuing of letters testamentary.

The direction in the will of John H. Barnett that Abraham

G. Barnett may act as executor, without giving bond or taking out letters testamentary, as the statutes require, is of no legal effect.

The current of decision in other states, so far as we are informed, is to the effect that under similar statutes (some of them less peremptory in their terms) any acts done by an executor by way of disposing of the property are invalid, unless he takes out letters testamentary, or is appointed executor by an order of the court of probate, equivalent to the issue of such letters. *Monroe* v. *James*, 4 Munford, 194; *Martin* v. *Peck*, 2 Yerger, 298; *Cleveland* v. *Chandler*, 3 Stew. (Ala.) 489; *Carpenter* v. *Going*, 20 Alabama, 587; *Ex parte Maxwell*, 37 Alabama, 362, 364; *Kittredge* v. *Folsom*, 8 N. H. 98, 111; *Rand* v. *Hubbard*, 4 Met. 252, 257; *Gay* v. *Minot*, 3 Cush. 352; *Carter* v. *Carter*, 10 B. Monroe, 327; *Stagg* v. *Green*, 47 Missouri, 500; *Hartnett* v. *Wandell*, 60 N. Y. 346, 350; *McDearmon* v. *Maxfield*, 38 Arkansas, 631.

We have been referred to no decision of the Supreme Court of Indiana that directly bears upon this case. The only one that approaches it is *Hays* v. *Vickery*, 41 Indiana, 583. In that case, an heir, named in the will as executor, had, without qualifying as such, or taking out letters testamentary, but with the consent of all the other heirs, devisees and legatees, acted as executor, and made distribution of the property. A subsequent order of the probate court, made without notice to him, upon the application of one of those heirs, appointing another person administrator with the will annexed, was reversed on appeal, and letters testamentary directed to be issued to the. executor upon his qualifying and giving bond according to law. The opinion proceeded upon the ground that the delay in taking out letters testamentary had been waived by the mutual arrangement of all parties interested; and it contained no intimation that the acts of an executor, who never took out letters testamentary, could affect the rights of any person interested in the estate who had not assented to them.

In the present case, whatever effect the facts that the other devisees knew that the executor was acting as such, and made no objection, might have against those of full age, the minor devisees could not be thereby estopped to assert their rights.

Letters testamentary issued to an executor, upon his qualifying according to law, may relate back and legalize his previous tortious acts. 1 Williams on Executors, 269; *Priest* v. *Watkins*, 2 Hill (N. Y.) 225. Or an order of the court of probate, appointing an executor, may not be subject to be impeached collaterally by showing that he did not in fact qualify; and may of itself be sufficient evidence of his authority, without the production of letters testamentary. *Vogel's Succession*, 20 La. Ann. 81; *Piatt* v. *McCullough*, 1 McLean, 69, 74.

But where, as in this case, the executor has never qualified, nor been appointed by the court, and no letters testamentary have been issued, we have found no decision, under statutes like those of Indiana, that any disposition of the property by the executor is valid as against persons interested who are not estopped by having consented to it.

In the absence of any decision upon the point by the Supreme Court of Indiana, we are therefore not prepared to hold that the release in question has any validity as an act done by Abraham G. Barnett as executor.

2. The difficulties are quite as great in the way of holding the release valid, considered as executed by Abraham G. Barnett in the capacity of trustee under the will, distinct from his office as executor.

In the first place, the will, after naming Abraham G. Barnett executor, and directing that he may act as such without giving bond or taking out letters testamentary, provides that "as executor he shall have authority under this will to proceed, as if he had letters testamentary, to execute the trusts devolved on him as executor, as also those which may incidentally arise in the execution of this trust as executor." By this iteration of the words "as executor," the testator clearly shows that he did not intend that in performing the usual duties of an executor he should act in any other capacity.

In the next place, it was not within the power of the testator to defeat the provisions and the policy of the testamentary law of the State, by bequeathing personal property to a trustee, without the intervention of an executor. As was

said by Chief Justice Shaw, delivering the opinion of the Supreme Judicial Court of Massachusetts, "It is an established rule of law, that all the personal property of the testator vests in the executors for some purposes, before probate of the will; but to all intents and purposes, upon its probate. This they take not merely as donees, by force of the gift, as *inter vivos*, but by operation of the rules of law controlling, regulating and giving effect to wills. A trustee, therefore, who is but a legatee, can take only through the executors. If a testator were to appoint no executor, or direct that the estate should go immediately into the hands of legatees or of one or more trustees for particular purposes, such direction would be nugatory and void." *Newcomb* v. *Williams*, 9 Met. 525, 533. So in the earlier case of *Hunter* v. *Bryson*, the Court of Appeals of Maryland said: "But suppose Bryson not to be created executor by the clause in the will which has been referred to, and that the testator's design was that the persons appointed should act literally as trustees, without taking out any letters testamentary or of administration. The appointment is a nullity, as far as the personal estate is concerned, being an attempt to evade the provisions of our testamentary system, in a way which the law does not tolerate." 5 Gill & Johns. 483, 488.

3. We are then brought to a consideration of the question whether the release can be upheld, because of the authority vested in Abraham G. Barnett as surviving creditor, under the settled rule that one of two joint creditors or mortgagees, or the survivor of them, may release the joint debt. *Penn* v. *Butler*, 4 Dall. 354; *People* v. *Keyser*, 28 N. Y. 226. The case, so far as affects this question, stands thus:

John H. Barnett and Abraham G. Barnett borrowed $8000 of Bissell, and lent $5000 of it to Freeman, and thereby became, at law as well as in equity, joint debtors to Bissell in the sum of $8000, and joint creditors of Freeman in the sum of $5000. Rudisill executed to John H. Barnett a bond, secured by mortgage, conditioned to pay to him the sum of $5000, describing it in the bond as part of the sum of $8000 borrowed by the two Barnetts of Bissell, thus clearly identi-

fying the debt, which Rudisill's bond and mortgage were intended to secure, as the $5000 which the two Barnetts had lent to Freeman, and which Freeman owed to them jointly. Rudisill's bond and mortgage, therefore, although they ran to John H. Barnett alone, and could have been enforced at law in his name only, yet in equity, having been made with the sole object of securing the payment of the debt which Freeman owed to both Barnetts jointly, belonged to them as joint creditors. *Batesville Institute* v. *Kauffman*, 18 Wall. 151.

Upon the death of John H. Barnett, the debt of Freeman was due to Abraham G. Barnett personally as surviving creditor, with authority as such to sue for and recover it, although he would of course be bound to account to John H. Barnett's representatives for half of anything that he might recover; and Rudisill's bond and mortgage continued to stand as security for that debt, and, while the legal title in this bond and mortgage vested in Abraham G. Barnett as executor, yet the equitable interest in them belonged half to him as executor and half to him personally. If he had received from the mortgagor payment of the sum secured by the mortgage, whether as executor or as surviving creditor, in either case he would hold half of that sum to his own use and half as executor. So a valid release of the whole or part of the land mortgaged, made by him, whether as executor or as an individual, would bar him both in his official and in his private capacity; and any substituted security, received by him as a consideration for the release, would ultimately enure to the benefit of the same persons, that is to say, one half to his own benefit, and the other half to the benefit of those entitled under the will. In short, neither the parties to whom, nor the amount in which, he would be liable to account for anything received upon a payment or release would be affected by the capacity in which he assumed to act. If he had never been named as executor, a release of the debt by him, being surviving creditor, would have been valid at law, and his release of the mortgage, which was security for that debt, would have been good in equity. There is no reason, therefore, which can influence a court of equity, why he might not

as surviving creditor release part of the mortgaged land from the mortgage.

The two characters of executor and of surviving creditor being united in the person of Abraham G. Barnett, the court, if he had executed the release in his own name merely, without describing himself as acting in either capacity, would presume that he acted in the character which would make the release valid and effectual. *Yeaton* v. *Lynn*, 5 Pet. 224, 229.

The form in which the release was drawn up and executed does not affect the equities of the case.

It begins with the absolute and comprehensive words, "I hereby release from any and all lien by reason of this mortgage." Then follow a description of the land released, by range, township, section and quarter section, and as that day conveyed by Rudisill to Burgess, Zollinger and Kamm ; and the final clause, "Witness my hand and seal as such executor, January 23, 1875." No executor had been previously named in the release, or in the mortgage, on the margin of the record of which the release was made. The release is signed "Abraham G. Barnett, executor of the estate of John H. Barnett, deceased."

When a person having title in property in different capacities, executes a deed in one capacity only, and holds the consideration received for the benefit of those entitled to it, a court of equity, at least, will be slow to hold the deed invalid for want of a more complete and formal execution.

In *Corser* v. *Cartwright*, L. R. 7 H. L. 731, a man who was one of two executors of his father, and also the residuary devisee of his lands, charged with the payment of his debts, made a mortgage of the lands, reciting that he was entitled to them in fee, and not describing himself as executor. Lord Romilly, M. R., held that this mortgage was not an exercise of the power vested in the executors for paying the testator's debts, but was only a mortgage of the beneficial interest of the devisee, and therefore ineffectual against the testator's general creditors. But his decree was reversed by the Lords Justices in Chancery, and their decree was affirmed by the

House of Lords upon the motion of Lord Chancellor Cairns, who said : " What I find is this, that the estates with which your lordships have to deal are clearly devised to, and the legal estate vested in, the residuary devisee, who was also one of the executors. I find him selling or mortgaging, and I find him, beyond all doubt, able to sell and able to give to a mortgagee a good title to the legal estate. I find that that legal estate is in his hands, and therefore any money that is produced by the sale or mortgage of that legal estate, is subject to and chargeable with the payment of debts and legacies; and that therefore the money coming into his hands must be money which ought to be applied to the payment of debts and legacies. But then I find that he himself is an executor of the testator; that he himself is the person who ought to hold assets impressed with the liability to satisfy debts and legacies. I find, therefore, that assets which ought to be applied to the payment of debts have come into the hands of an executor, and that he has given a receipt for them. Therefore, on the one hand, the mortgagees have got the legal estate; and on the other hand, they have got a receipt from the proper person for money which ought to be applied to the payment of debts and legacies. That being so, it appears to me that their title is entire and complete." L. R. 7 H. L. 740.

In *West of England Bank* v. *Murch*, 23 Ch. D. 138, that decision was followed, and applied to this state of facts: One of two brothers, partners in business, died, leaving a will, by which he directed his debts to be paid, and devised his real estate in trust with power of sale, and appointed his widow executrix and trustee. The widow and the surviving brother sold and conveyed real estate of which the two brothers had been tenants in common, and which was in fact partnership property, by deeds reciting that the brother in his own right, and the widow as trustee under the will, were seised of it in fee as tenants in common, but not stating that she was executrix, or that the property was partnership property. This conveyance was held to be valid, Lord Justice Fry saying: " It is plain that as executrix she could sell the whole of the

partnership property." "Then it is said that if she had power
so to do, yet, by omitting to state in the deeds by which she
conveyed the freehold property that she was acting as execu-
trix, she precluded herself from asserting that she was acting
in that character. In my judgment, she did not. It must be
borne in mind that, as executrix, hers clearly was the hand to
receive the purchase moneys, and therefore those moneys came
to the right hand, the hand of the person whose duty it was
duly to apply the assets in satisfaction of the creditors of the de-
ceased as well as of the beneficiaries under his will. Moreover,
whether she was acting as trustee or as executrix, she was
under an obligation to do the best she could for the estate.
Her fiduciary character was substantially the same, whether
she was acting as executrix or as trustee. I think, therefore,
that I should be straining at a gnat, if I were to hold that the
mere fact, that she spoke of herself in the instruments as
trustee and not as executrix, was enough to prevent the valid-
ity of a transaction which, in her character of executrix, I
hold that she had the power of carrying into effect." "The
legal estate passed from her, because she held it as trustee, and
the money reached the hands of the person who was bound to
distribute it among the persons entitled to it. I therefore
overrule this objection." 23 Ch. D. 151–153.

In the present case, the legal title, indeed, in the bond and
mortgage of Rudisill was in Abraham G. Barnett as executor,
and could not, at law, be released by him in any other capac-
ity. But the legal title in the debt, for which the bond and
mortgage stood as security, and to which in equity they were
incident, was in him as surviving creditor. In equity, there-
fore, he had the right, as surviving creditor, to release the
mortgage, in whole or in part; and any consideration for such
a release, whether received by him as executor or as surviving
creditor, would enure to the benefit of himself, and of the es-
tate of his testator, in equal moieties.

If he had received payment of the debt, and given a receipt
for it as executor, he would have held the money, half as ex-
ecutor, and half to his own use, just as he would have held it
if he had receipted for it in his own name only; and it cannot

be doubted that the addition "as executor" in the receipt
would not have prevented the payment from extinguishing
the debt, and consequently the mortgage by which it was
secured.

The release which Abraham G. Barnett did execute was of
part of the land mortgaged, and in consideration of receiving
a mortgage of other land, the parties to the release and to the
new mortgage acting in good faith, and with no intent to de-
fraud devisees or other persons interested.  The body of the
release contains apt words of release by him (without stating
in what capacity) of the land described "from any and all
lien by reason of this mortgage;" and he is described as
executor in the *testimonium* clause and the signature only.
Although he is described as executor in the new mortgage
also, a court of equity certainly could not hold that, mortgage
to convey any interest to him, as executor or otherwise, if the
release for which it was the consideration was void.

Abraham G. Barnett was the person authorized to make
the release, and the consideration for the release came into
his hands, for the benefit of the persons entitled to it.  The
interests of no one were affected by the question in which of
his two characters he executed the release, and received the
new mortgage.  Whether he acted as executor or as surviving
creditor, the fruits of the transaction belonged, in equity, one
half to himself and one half to the estate of John H. Barnett.

If the whole debt had belonged to him alone, the descrip-
tion of himself as executor in the release could not have pre-
vented its operating upon his interest in the debt, and in the
mortgage by which that debt was secured.  As the survivor of
two joint creditors, he had the same power (independently of
any authority as executor) to release the debt and the mort-
gage, as if he had been the sole creditor.  The release, there-
fore, notwithstanding the superfluous description of the re-
leasor as executor, was, by reason of his being surviving cred-
itor, binding upon the interests of the representatives of the
deceased creditor, as well as upon his own; and upon this
ground the

*Decree is affirmed.*