WILLIAM D. GALL, Appellant, *vs.* CHARLES STOLL *et al.* Appellees.

*Opinion filed June 18, 1913.*

1. REAL PROPERTY—*when holder of bond for deed has neither legal nor equitable title.* The holder of a bond for a deed providing for a conveyance of land to him upon his making the payments therein specified at the time and in the manner provided for, has neither the legal nor an equitable title to the land until he has paid the consideration, as until that time the bond is merely a contract to convey.

2. SAME—*when purchase of land by widow is not as executrix.* The mere fact that the widow was named as executrix of her husband's will does not make her purchase of land for which her husband held a bond for deed a purchase by her as executrix, where she never qualified or assumed to act as executrix and where no part of the money used by her to pay for the land was derived from the husband's estate.

3. EXECUTORS AND ADMINISTRATORS—*death of testator does not clothe the person named as executor with all powers and duties.* While a will speaks from the death of the testator, yet his death does not, of itself, clothe the person named in his will as executor with all the powers and duties of that office, and if such person refuses to accept the appointment no trust or fiduciary relation arises between him and the heirs and legatees of the estate but he stands in the position of a stranger to the will.

APPEAL from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

BENNER & WELD, and EDWARD W. SCHOEDE, for appellant.

EDWARD CORLETT, and GEORGE J. CLARE, for appellees Charles Stoll *et al.*

JOHN H. SAVAGE, for appellees Julia M. Schiek and Simon Hohenstein, Jr.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Will county dismissing a bill filed by appellant and others for the partition of an eighty-acre tract of land and other relief. The land in controversy prior to 1855 belonged to Isaac Francis, and on June 11 of that year he entered into a written agreement, which is denominated by counsel a bond for a deed, in and by which he agreed to convey to Charles Gall said tract of land for the sum of $1540,—$100 to be paid in cash on delivery of the agreement, $700 on the first day of March, 1856, and $740 on the first day of March, 1857. In and by said instrument said Francis agreed that upon the payment of said sums being made at the time specified he would convey the land to Charles Gall, free and clear of encumbrance, by warranty deed. Gall died testate July 12, 1856, leaving a widow, Julia, but no children or descendants of children, a brother, Frederick, and a sister, Margaret Pfeffer, as his only heirs-at-law. At

the time of his death he owned two lots in Mokena, Will county. By his will he devised all his property, real and personal, to his widow for and during her natural life, and described therein the Mokena lots and the eighty-acre tract of land in controversy. No disposition was made by the will of the remainder of testator's estate. At the time of Gall's death only $100 or $200 had been paid on the bond for a deed to the eighty acres and he was in default upon the payments agreed to be made. After his death, and before the last payment was due, March 1, 1857, his widow married Moritz Weiss, and on the third day of March, 1857, Francis and Weiss met at the office of Ozias Mc-Govney, in Mokena. McGovney thinks Mrs. Weiss was there, too, but is not positive. Weiss paid Francis $1300 or $1400 at that time, and McGovney drew a warranty deed from Francis to Julia Weiss conveying to her the tract of land in controversy for the express consideration of $1600. While the money was furnished by Weiss the deed was by his request made to his wife. She took possession of it and claimed to own it until her death. Mrs. Weiss survived her husband and married another man, named Blaser, who died before her death. She died May 6, 1911, leaving a will, in and by which she devised to appellees the land sought to be partitioned.

The bill in this case was filed by the heirs of Frederick Gall, who died intestate in 1873, and alleged that the widow of Charles Gall took a life estate, under the will, in his lands, and that the remainder descended one-half to his brother and sister and the other half to his widow, Julia. The will of Charles Gall was filed and admitted to probate within a few days after his death, but no letters testamentary or of administration were ever issued upon his estate. No inventory was filed and no report was ever made in connection with said estate. By his will Charles Gall made specific bequests to his brother, Frederick, of $5, to Frederick's children of $50, to be divided equally between them,

and to his sister, Margaret Pfeffer, of $5. The only papers, besides the will, found among the files of Charles Gall's estate are three receipts to "M. Weiss, executor of the last will and testament of Charles Gall." One for $5, dated January 10, 1867, signed "Fritz Gall," stated that it was in full of the legacy left him by the will of his brother. Another was signed by Wilhelmine Gall, guardian of the minor children of Frederick Gall, for $41.66, and one for $8.33, dated February 6, 1867, signed by Caroline Gall, one of the children of Frederick Gall. No claims were ever filed against the estate. The bill alleges that when the widow paid for and received a deed for the land she was carrying out the implied directions of the will, as executrix; that she was in equity a trustee, and, subject to her life estate, held the fee to the undivided one-half thereof for the use and benefit of Frederick Gall, and that upon his death complainants, who were his heirs, succeeded to his title. The bill prays that a decree be entered so declaring, and that said lands be partitioned.

The answer of appellees denied the widow took title to the land as executrix under the will and alleged that she purchased it from Francis for $1600, and that none of the purchase money came from the estate of Charles Gall but that it was paid for with her individual money; denied that she acquired title in compliance with or in completion of the supposed bond, and denied that complainants had any interest in the land whatever. The answer also averred that the heirs-at-law of Charles Gall well knew that she acquired the land by deed and ever thereafter claimed to be the absolute owner thereof, and that they never pretended to claim any interest therein. The answer further averred that the grantor and grantee in the deed, and nearly everyone else who knew the facts concerning the transaction by which Julia Weiss acquired title, were dead; that the original papers and memoranda in connection with the transaction were lost and that it is now impossible to fully establish

the facts in connection therewith; that if the facts were
clearly established complainants would be without standing
in court. The answer further averred that the heirs of
Charles Gall having failed to bring suit to establish their
claim during the lifetime of his widow and within a reason-
able time after she took possession of the land under claim
of ownership, they are barred by *laches*. Appellees also
filed a cross-bill, substantially setting up the same matters
contained in their answer and praying a decree confirm-
ing their title, or, in the alternative, that if the court should
not so hold, then it be adjudged the widow acquired and
held by purchase such part of or interest in the land as
will bear the same proportion to the whole as the purchase
money paid by her bears to the entire purchase price of
$1600, and that she acquired and held by descent an un-
divided one-half of the remaining portion of or interest
in said real estate. Complainants answered the cross-bill,
denying its material allegations.

Julia Schiek and Simon Hohenstein, Jr., who are made
parties to the original bill as executors of the will of Julia
Blaser, deceased, answered the original bill and also filed
a cross-bill, alleging that the widow of Charles Gall paid
$1440 of the purchase price for the land out of her own
funds, and prayed that complainants be held to account to
her for that amount, with interest. This cross-bill was an-
swered by the complainants and by appellees, who were
all made parties to it. Replications were filed to the an-
swers, and upon a hearing a decree was entered dismissing
the original bill of complainants and the cross-bill of the
executors of Julia Blaser for want of equity and granting
the prayer of the cross-bill of appellees and confirming the
title to the land in them. Complainants, jointly and sev-
erally, prayed an appeal to this court. It was granted upon
their filing bond in a sum fixed by the court, and one of
said complainants, William D. Gall, has perfected the ap-
peal and brought the record to this court for review.

The findings of the chancellor as recited in the decree are, that Julia Weiss paid the purchase money for the land with money furnished by her husband, Moritz Weiss, or out of her own individual means; that no part of it was paid out of the assets of the estate of Charles Gall or was paid by her as executrix of his will; that after the conveyance of the land to her, Julia Weiss (afterwards Julia Blaser) claimed to be the absolute owner of the land, and all interest therein, in fee simple, until the day of her death, and that she died seized and possessed thereof in fee simple. The decree also finds and recites that the complainants are barred and estopped to question her title because of their *laches*, and the *laches* of those through and under whom they claim, in failing and neglecting to assert any ownership or interest in the property and accept the obligations and responsibilities incident thereto within a reasonable time after said Julia acquired title to said property. The decree confirms the title of appellees under the will of Julia Blaser, subject to the payment of the debts of her estate in the event of a deficiency of the personal property to pay them.

Appellant contends that the legal title to the land in controversy passed to Charles Gall under the bond for a deed; that the devise of the land to his widow amounted to an election by Charles Gall to complete the purchase and required specific performance by his executrix, and that in taking title the widow acted as executrix though she had never qualified or received letters testamentary, and thereby became a trustee of the title for the benefit of the estate regardless of whether she used her own money or that of the estate in paying for the land. Appellant also contends that the possession of said Julia was not adverse during her life, and that until her death neither the Statute of Limitations would run against nor *laches* be imputed to the remainder-men.

By the bond for a deed executed by Francis he agreed to convey to Charles Gall the land in controversy upon his making the payments in the time and manner mentioned in the instrument. No right of possession was given Gall, and no title, legal or equitable, vested in him by virtue of that agreement. It might have ripened into an equitable title upon his making the payments necessary to entitle him to a deed, but until that time it was but a contract to convey when Gall had paid the purchase price in accordance with the requirements of the instrument, and until that had been done he had no title to or interest in the land. (*Chappell* v. *McKnight,* 108 Ill. 570; *Walters* v. *Walters,* 132 id. 467; *Phenix Ins. Co.* v. *Caldwell,* 187 id. 73.) The agreement of Francis was to convey the land to Gall "upon the payment of the said sums being made at the time and in the manner aforesaid." But Gall did not make the payments "at the time and in the manner" fixed in the bond for deed. We think the conclusion warranted that $100 was paid by him at the time the agreement was made. It is not clear that he ever paid any further sum, but if he did it was not more than $100, so that he was in default after the first day of March, 1856. He died about the 12th of July following, but no forfeiture was declared by Francis, unless the conveyance to Mrs. Weiss should be treated as a forfeiture. It is clear, however, from the proof, that Gall left no money or property out of which the payments could be made. On the third of March, 1857, Moritz Weiss, who had married the widow of Charles Gall, paid Francis, out of his own money, $1300 or $1400, and Francis made the deed to Mrs. Weiss. Ozias McGovney, who at the time of the trial was eighty-eight years old, was the only person living who knew anything about the circumstances of that transaction. He lived at Mokena and was a neighbor of the Galls. He was a justice of the peace, and Francis, Moritz Weiss, and probably Mrs. Weiss, came to his office to have him prepare the deed. The witness

could not remember certainly whether Mrs. Weiss was present. At the time, $1300 or $1400 was paid for the deed. There was some talk between the parties that $100 had been paid at the time the bond for deed was made and $100 afterwards, by somebody, but the witness had no recollection of who was said to have paid the second $100. The witness drew the will of Charles Gall, and testified that the widow thought the will made her the absolute owner of her husband's property, and witness thought so, too. He did not remember whether the deed from Francis to Mrs. Weiss was made by way of carrying out the bond for deed. He testified the parties came to his office and asked him to prepare the deed, and he did not remember from anything that was said that Mrs. Weiss was aware of the existence of the bond for a deed. After the deed was made Mrs. Weiss took possession of the land and thereafter always claimed to own it until her death,—a period of fifty-four years.

We think the evidence shows that Mrs. Weiss, in taking title to the land, was not acting as executrix or under any power or duty supposed to be conferred by her deceased husband's will, but that her then husband used his own money to buy the land for her and in the transaction Mrs. Weiss was not acting in any trust capacity toward the heirs of Charles Gall. While she was named executrix in the will the evidence shows she never qualified as such. No letters testamentary were ever issued and nothing was done by her to show that she assumed the duties of executrix. The will becomes operative from the time of the death of the testator, but the person therein named as executor does not by the death of the testator become clothed with all the powers and duties incident to that office. At common law the executor had many powers prior to the probate of the will and issuance of letters testamentary that he does not possess under our statute. (*Wall* v. *Bissell,* 125 U. S. 382.) Section 4 of the Administration act provides that

the power of the executor over the testator's estate, before probate of the will and obtaining letters testamentary, shall extend to the burial of the deceased, the payment of necessary funeral charges and the taking care of the estate. Section 7 requires the executor to enter into bond, with good and sufficient security to be approved by the county court, before entering upon his duties. The appointment gives him the right to become executor upon complying with the conditions required by law, but he can exercise no powers other than those specified by statute until he is appointed by the court and qualifies, as required by law. (2 Woerner's Am. Law of Administration, sec. 172; Horner's Probate Law, sec. 171; *Stagg* v. *Green,* 47 Mo. 500; *Wall* v. *Bissell, supra.*) The person named as executor can not be compelled to accept the executorship. He may refuse to accept the appointment if he desires. In such case no trust or fiduciary relation arises between the person so named as executor and the heirs and legatees under the will. He stands in the same position as a stranger to the will. Julia Weiss, therefore, not having qualified as executrix and having in no way presumed to act as such, cannot be held to have acted in that capacity from the fact, alone, that she was made grantee in a deed from Francis to the land for which her former husband held a bond for a deed, no part of the funds of the estate having been used to make such purchase. Gall owned so little property that his widow was left in very straightened circumstances and it was impossible to pay for the land out of the assets of the estate. The widow never qualified nor derived any authority from the court to act as executrix and to administer her deceased husband's estate. We think it must be held the widow of Charles Gall did not take the title as trustee but that she took it as an absolute owner, and the brother and sister of Charles Gall had no interest therein, legal or equitable.

The decree of the circuit court is affirmed.

*Decree affirmed.*