City of Chicago, a Municipal Corporation, Appellee, v. North End Building Corporation, Appellant, and Bernard Distenfield, Amelia Ramos and J. Antonio Alicea.

Gen. No. 48,507.

First District, Second Division.

February 23, 1962.

Arthur Y. Schulson, and Milton K. Joseph, of Chicago, for appellant.

John C. Melaniphy, Corporation Counsel, of the City of Chicago (Sydney R. Drebin and Harry H. Pollack, Assistant Corporation Counsel, of counsel), for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court:

The City of Chicago brought a quasi-criminal suit against four defendants, North End Building Corporation, its president, Bernard Distenfield, Amelia Ramos, and J. Antonio Alicea, for alleged violations of specified municipal ordinances. Trial by the court without a jury resulted in findings of not guilty as to Bernard Distenfield and Amelia Ramos; North End Building Corporation and J. Antonio Alicea were found guilty, and fines were assessed against them in the amounts of $3000 and $500, respectively, together with costs. Alicea paid his fine; the corporation moved to vacate the judgment or in the alternative to have the case retried. Its motion was denied, and it alone appeals from the adverse judgment against it and the order denying its motion to vacate it.

In thirty separate counts the city's statement of claim alleged thirty violations of building, housing, fire-prevention, electrical, plumbing, and zoning ordinances, all found in the apartment building at 8426 South Green Bay Avenue in Chicago, on September

20, 1960. Count 31 of the statement of claim alleged continuous violations on days subsequent to September 20, 1960. On trial the parties stipulated that the violations as charged in the complaint were present on the date of September 20, 1960.

■ A brief recital of the salient facts will be helpful in a determination of the issues involved. In 1955 the defendant corporation purchased the flat building in question, and about a year later, in March 1956, sold it on contract to the defendant Alicea. Upon closing the deal Alicea took possession, collected the rents, and made substantial repairs and improvements. He occupied and managed the premises until some time in 1958, when he left for Puerto Rico, turning over the management to his niece, the defendant Amelia Ramos, who was a tenant in the building at that time. Miss Ramos thereafter collected the rents, paid the operating expenses, and arranged for maintenance and repairs. The defendant corporation did not manage, maintain, rent, or repair the premises after the sale to Alicea in 1956. Because of these circumstances the corporation contends that Alicea was the owner, and attempts to avoid liability on the ground that it was not an owner within the class of persons who are made subject to the ordinances in question.

Section 39.2 of the Municipal Code of Chicago reads:

". . . Unless otherwise specifically provided, the owner, his agent for the purpose of managing, controlling or collecting rents and any other person managing or controlling a building or premises, in any part of which there is violation of the provisions of this code enumerated in section 39.1 of this chapter, shall be liable for any violation therein, existing or occurring, or which may have existed or occurred, at or during any time when such person is or was the person owning or managing, controlling, or acting as agent in re-

308

gard to said buildings or premises. Wherever used in said provisions of this code, the 'owner' shall include any person entitled under any agreement to the control or direction of the management or disposition of the building or premises or any part of the building or premises where the violation in question occurs.

"The liabilities hereunder imposed on an owner shall attach to a trustee under a land trust, holding title to such building, structure or premises without the right of possession, management or control, unless said trustee in a proceeding under said provisions of this code discloses in a verified pleading or in an affidavit filed with the court, the name and last known address of each person who was a beneficiary of the trust at the time of the alleged violation and of each person, if any, who was then acting as agent for the purpose of managing, controlling or collecting rents, as the same may appear on the records of the trust. . . ."

We had occasion to consider the provisions of this ordinance and the liability thereunder in the recent case of City of Chicago v. Mandoline, 26 Ill App2d 480, 168 NE2d 784 (1960). It was admitted in that case that Mandoline had not delivered a deed to Powe, the contract purchaser, and that the seller Mandoline had retained title thereto. Mandoline contended, as does the corporation in the instant proceeding, that he was not an owner within the purview of the applicable ordinance, and that he did not own, maintain, operate, or control the premises. In the Mandoline case it appeared that the articles of agreement for sale of the property did not give the contract purchaser Powe any control of the premises. The contract was so restrictive that Powe was not permitted to record the contract to show his interest; he could not sublet the

309

premises without Mandoline's permission; he could not make any repairs that would constitute a lien on the premises; he was required to submit to Mandoline every contract, together with the plans, for any improvement; and he could not obtain control until he received the deed. We held that Mandoline was not only the owner of the property within the purview of the ordinance, and thus liable for any violations, but that under the articles of agreement he had complete control of the property to the exclusion of the contract purchaser. In the instant proceeding the contract of purchase was not adduced in evidence, and we therefore have no way of ascertaining what provisions were made for control of the property. It was incumbent on the corporation to produce it under its contention as to ownership. The Mandoline case was decided on the basis of the ordinance as well as the provisions of the sales contract, and we held that an owner of record, even though a contract purchaser is in possession, is an owner under the city ordinance and as such is liable for ordinance violations. Alicea, the contract purchaser in this case, could not dispose of the property because the building corporation retained title and thus continued as the owner. The fact that the city ordinance also makes liable the agent of an owner "and any other person managing or controlling a building or premises, in any part of which there is a violation" of the applicable ordinances, does not alter the liability of an owner. All the individual defendants testified upon trial, which, in a way, developed into a contest among them as to responsibility for the violations. Distenfield testified that the corporation owned the building for about a year before selling it to Alicea, and that at the time of the sale he did not know what ordinance violations existed on the premises. The building was then in a deplorable

condition. Miss Ramos, Alicea's niece, testified that she had been living in the first-floor front flat of the building since December 1957; that when she moved in, the building was run-down and in bad condition; that she had to break down a door to enter the building; that the stairwell in the front was rotted; that the plaster was cracked; that the steps were broken and had no handrail; that the first-floor rear apartment had rotted flooring; that the windows were broken; that the condition of the rear second- and third-floor apartments was the same; that the boards gave way when stepped on; that some of the plumbing facilities had been removed, and others were inadequate.

The ordinances were adopted to promote the public health, safety, and welfare; they require that buildings be maintained in conformity with specified standards, and subject to liability for violation everyone having an interest in a building, as defined in the code.

The remaining contention is that the fine of $3000 was excessive and not supported by the pleadings and the evidence. The fine was based on a finding of guilty as to four counts in the complaint, namely, counts 1, 2, 6, and 31. There was no finding or assessment of fine as to the other counts of the complaint. The report of proceedings shows: "Findings of guilty against the Corporation, $3,000 and costs. As I said, the North End is guilty on Counts 1, 2, 6 and 31. Finding of guilty, $3000 and costs; . . ." Under this finding the maximum fine which could have been assessed under the ordinances on counts 1, 2, and 6 was $200 on each count or a total of $600. Count 31 is based on an additional penalty provision for continuing the violations after notice; the record is silent as to any date on which any violation occurred subsequent to September 20, 1960. No inspector who examined the premises prior to the filing of this suit was called by the

311

city; there were no witnesses on its behalf. The city argues that upon trial it had building inspectors ready to testify, but that the following took place:

> "Mr. Schulson [Attorney for Defendant]: Well, we have stipulated that the inspectors' presence here would not be necessary.
> "The Court: That is right."

We have no way of knowing what the inspectors would have testified to, and no offer of proof was made by the city as to what their testimony would be. Accordingly, there is no basis for assessing a fine under count 31 of the complaint.

For the reasons indicated, the judgment against the building corporation is reduced from $3000 to $600, and the judgment as modified is affirmed.

Judgment as modified affirmed.

BRYANT and BURKE, JJ., concur.