(No. 37026.—

Arthur R. Shay, Appellee, *vs.* Grace Penrose, Appellant.

*Opinion filed September 28, 1962.*

Ward and Ward, of Sterling, (Philip H. Ward, Jr., of counsel,) for appellant.

ALEXANDER L. HAGLUND and WILLIAM E. GRETLER, of Sterling, for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is an appeal from a final order of the city court of Sterling in an action for the partition of real estate, striking certain affirmative defenses and dismissing the amended counterclaim of the defendant, Grace Penrose. A freehold is involved.

Carol M. Shay individually acquired six parcels of real estate in her lifetime. Between 1955 and 1960 she executed contracts for deed to separate purchasers of four of the properties. None of the contracts is set out in full but it appears from the pleadings that they are the type of contract for deed in common usage by the profession. Each provided for a down payment with the balances payable in varying amounts per month together with interest on the balances from time to time unpaid. Each buyer went into possession under his contract. Provisions were made for delivery of abstracts of title showing merchantable title in seller, title examination by the buyers, methods of perfecting any title defects, and delivery of warranty deeds upon receipt of final payment. The seller retained an option of forfeiture in the event the buyer failed to perform his covenants, including that of making the specified payments.

On July 31, 1960, Carol M. Shay died intestate and was survived by her husband Arthur R. Shay, the plaintiff, who is also made a party as administrator, and her sister Grace Penrose. The husband filed a complaint for partition of the two unsold tracts. The sister answered admitting the allegations with respect to the two tracts but alleged that plaintiff should have included the four parcels sold under contract. By her counterclaim the sister alleged that she and the surviving husband were each entitled to a one-half interest in the four parcels and prayed for partition of them as well as the two tracts described in the complaint. This is

based upon her theory that she is entitled to one-half of each of the four tracts of real estate under section 11 of the Probate Act. Ill. Rev. Stat. 1961, chap. 3, par. 11.

The trial court held that equitable conversion had occurred at the time of execution of the contracts so that the four tracts were not subject to partition by heirs of the seller. Defendant's basic contention is that equitable conversion does not apply to a long term contract for the sale of real estate prior to the time that both parties have performed all acts necessary to complete the contract except tender of final payment and delivery of the deed.

Equitable conversion is the treating of land as personalty and personalty as land under certain circumstances. Hence, as between the parties and those claiming through them, when the owner of land enters into a valid and enforceable contract for its sale he continues to hold the legal title, but in trust for the buyer; and the buyer becomes the equitable owner and holds the purchase money in trust for the seller. The conversion takes place at the time of entering into the contract. It stems from the basic equitable principle that equity regards as done that which ought to be done. The doctrine of equitable conversion has been recognized in Illinois, as it has in practically every other jurisdiction, since earliest times. *Lombard* v. *Chicago Sinai Congregation,* 64 Ill. 477; *Fuller* v. *Bradley,* 160 Ill. 51; *Lewis* v. *Shearer,* 189 Ill. 184; *Rhodes* v. *Meredith,* 260 Ill. 138; *Ward* v. *Williams,* 282 Ill. 632; *Knights* v. *Knights,* 300 Ill. 618; *Smith* v. *Smith,* 340 Ill. 34; See Pomeroy, Equity Jurisprudence, 5th ed. vol. 2, sec. 368.

We would be less than candid if we said that this court has been consistent in applying the doctrine. Much of the confusion in this area arose from language in the early case of *Chappell* v. *McKnight,* 108 Ill. 570. It was there said that the contract to convey at a future time did not create an equitable title and that the buyer's estate would not ripen into an equitable title until he had performed all acts neces-

sary to entitle him to a deed. While the *Chappell* case was one at law (ejectment) and therefore the equitable doctrine did not apply, nevertheless, it was cited with approval in some subsequent equity cases. (See *e.g., Walters v. Walters,* 132 Ill. 467; *Gall v. Stoll,* 259 Ill. 174.) We believe the correct view to be that expressed in the majority of the cases which hold equitable conversion takes place at the instant a valid and enforceable contract is entered into and that the buyer at that time acquires an equitable title. To the extent that the *Chappell* case and those following it are inconsistent with this view they are hereby expressly overruled.

The defendant seeks, in effect, a definitive rule of application of the doctrine in the several fields where it may be invoked, such as dower, insurance, joint tenancy and the like. The issue here presented is devolution of title at the death of the seller and we concern ourselves in this opinion only with that issue.

It is suggested that a hearing is necessary to determine whether these contracts for deed are valid and enforceable, a prerequisite to application of the doctrine of equitable conversion. Since neither lack of validity nor lack of enforceability was properly raised by the pleadings, the chancellor was not required to hear evidence on these matters. The terms of the contracts were sufficiently set out and their existence admitted in the counterclaim, so that the trial court had enough information to pass upon the question of whether the counterclaim stated a cause of action.

The defendant seems to read special significance into the long term nature of these contracts and suggests that a seller needs the protection of the courts. The simple answer is that a seller voluntarily enters into such a contract and is deemed to know the legal implication of his acts. To base application of the doctrine of equitable conversion upon the length of time the contracts have to run would leave titles in an utter state of confusion. It is a

matter of common knowledge, admitted by defendant, that contracts for deed are useful to and increasingly used in our society. As a matter of policy, entirely aside from the legal desirability of a doctrine almost universally accepted, certainty and stability of titles dictate that application of the doctrine cannot depend upon the flexible element suggested by defendant.

Thus far we have treated all four contracts in their general aspects, and now turn to special circumstances with respect to two of them. The DeWitt contract was two months in arrears at the date of the seller's death. The Horton contract provided that it was not assignable without the written consent of the seller, and the plaintiff, individually and as administrator of the seller's estate, consented to an assignment after seller's death. The answer applies to both situations. Equitable conversion took place at the time of execution of the contracts, so that upon the death of the seller the plaintiff became entitled to the entire unpaid balance of the purchase prices as personal representative of the decedent, since it was personal property under the doctrine of equitable conversion. The option to declare the contract in default and the right to consent to the assignment were therefore vested in the plaintiff as administrator.

We find no error in the order of the city court of the city of Sterling striking part of the answer and dismissing the counterclaim and it is, therefore, affirmed.

*Order affirmed.*