## In re Larry Dean FITCH and Linda Sue Fitch, Debtors.

### Bankruptcy No. 94–40071.

United States Bankruptcy Court,
S.D. Illinois.

Nov. 1, 1994.

A. Courtney Cox, Atty., Benton, IL, for Bill Smith.

Darrell Dunham, Atty., Murphysboro, IL, for debtors.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

The question presented by this case is whether an installment contract for the sale of a business to the debtors is an executory contract assumed by the debtors under § 365 or whether it constitutes a financing device granting the seller a secured claim that may be modified in the debtors' Chapter 12 plan.

Approximately a year prior to bankruptcy, debtors Larry and Linda Fitch entered into an agreement to purchase a meat-processing business and its underlying assets, consisting of real and personal property, from owner Bill Smith. The contract, dated December 30, 1992, provided for payment of the balance owing under the contract in equal monthly installments over seven years, at which time title to the business property would be delivered to the debtors.

On February 3, 1994, the debtors filed their Chapter 12 bankruptcy petition and, less than a month later, on February 22, 1994, filed a motion to assume this "executory contract." In their motion, the debtors indicated that case law was unsettled as to whether the contract constituted an executory contract under § 365 and stated that the filing of their motion should not be construed as waiving any other rights the debtors might have under applicable provisions of the Bankruptcy Code. The Court granted the debtors' motion on March 17, 1994, and ordered that the contract between the debtors and Bill Smith "is hereby assumed."

The debtors have now filed a Chapter 12 plan in which they propose to treat the contract seller, Bill Smith, as a secured creditor and to pay him the reduced value of the collateral securing his interest rather than the amount remaining due under the contract.[1] *See* 11 U.S.C. § 1222(b)(2). Bill Smith objects to confirmation of this plan, asserting that the debtors, having assumed

---

1. In addition to the meat-processing business, which is the subject of the present case, the debtors also engaged in farming operations that provided the basis for their Chapter 12 filing. *See.* 11 U.S.C. §§ 101(18), 101(21).

the contract, are required to cure all defaults and pay the contract according to its terms.

The debtors respond that their assumption of the contract was "conditional" and could not transform what is essentially a security agreement into an executory contract. They assert that, under the parties' agreement, seller Bill Smith retained title to the business property merely as security for the debtors' payment of the purchase price over the period of the contract. They maintain that the contract is more appropriately characterized as a security agreement rather than as an executory contract in which material unperformed obligations remain on both sides.

## I.

■ Section 365, providing for the assumption or rejection of executory contracts, allows a trustee or debtor in possession to accept the benefits of an advantageous contract by assuming it or to be relieved of the obligations of a burdensome contract by rejecting it.[2] See In re Norquist, 43 B.R. 224, 225 (Bankr.E.D.Wash.1984). By its terms, § 365 applies only to "executory" contracts—those contracts in which performance remains due to some extent on both sides. See Streets and Beard Farm Partnership, 882 F.2d 233, 235 (7th Cir.1989) (hereinafter Streets and Beard ). This limitation is logical in light of the statutory purpose of benefiting the debtor's estate, as assumption of a contract is pointless if performance has already been rendered and the estate possesses whatever benefits it could obtain under the contract. Likewise, rejection of an executed contract neither adds to nor detracts from a claim for payment under the contract or the estate's liability for such payment. See V. Countryman, Executory Contracts in

Bankruptcy Part I, 57 Minn.L.Rev. 439, 450–52 (1973) (hereinafter Countryman I); In re Shada Truck Leasing, Inc., 31 B.R. 97, 99 (Bankr.D.Neb.1983).

■ The debtors here, rather than first seeking a court determination concerning the nature of their contract for purchase of the meat-processing business, moved to assume it as an executory contract and only later concluded that the parties' duties under the contract had been so far performed that it constituted a security device as to which § 365 is not applicable.[3] The consequences of characterizing the debtors' contract as either an executory contract or an executed contract giving Bill Smith a secured claim are significant. If it is an executory contract, the debtors will be required to cure any defaults under the contract and pay it according to its terms, providing adequate assurance of future performance. See 11 U.S.C. § 365(b)(1). By contrast, if it is an executed contract under which Bill Smith retained title to secure payment by the debtors, the debtors may modify the payment terms of the contract, making it less burdensome for them to retain the property. See In re Kratz, 96 B.R. 127, 129 (Bankr. S.D.Ohio 1988).

■ In objecting to the debtors' proposed treatment of his claim, Bill Smith appears to argue that the debtors are somehow estopped from changing their characterization of the contract. However, Bill Smith fails to allege any reliance or prejudice resulting from the debtors' assumption that would result in estoppel. During the course of their bankruptcy proceeding, the debtors have made monthly contract payments pursuant to

---

**2.** Section 365 provides, with specified exceptions, that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

**3.** At hearing, counsel for the debtors stated that he filed the motion to assume the contract with Bill Smith in February 1994 because he did not want to risk the contract being deemed rejected for failure to assume or reject within 60 days of the order of relief. Counsel's action was ill-advised and created unnecessary confusion in this case. The provision for automatic rejection

of an executory contract is applicable only in a Chapter 7 case. See 11 U.S.C. § 365(d)(1). In a Chapter 12 case, the debtor in possession has until confirmation to elect to assume or reject an executory contract and may so provide in his plan of reorganization. See 11 U.S.C. § 365(d)(2); 2 Collier on Bankruptcy, ¶ 365.03, at 365–28 (15th ed. 1994). While § 365(d)(4) also provides for automatic rejection after 60 days, its application is limited to "unexpired leases of nonresidential real property," and there has been no suggestion that the parties' contract constitutes such a lease. See 11 U.S.C. § 365(d)(4).

this Court's order to cure delinquencies and keep payments current, and the debtors' assumption has no way prevented Bill Smith from acting to protect his interest under the contract. The Court, therefore, finds Bill Smith's estoppel argument to be without merit.

■■■ A debtor cannot change the nature of a contract merely by electing to assume it under § 365. Bill Smith is correct that a debtor may not "conditionally" assume an executory contract and, having assumed such a contract, must accept its burdens as well as its benefits. However, the requirement remains that a contract must be executory before § 365 applies to allow for assumption or rejection. Otherwise, a debtor's assumption of what is, in actuality, a security agreement would result in that creditor receiving a preference over other secured creditors whose claims are subject to modification.

The Court will, therefore, determine whether the debtors' contract is essentially an executory contract or a security device affording seller Bill Smith a secured claim. If it is an executory contract, the debtors will be held to have assumed it under the Court's previous order approving the debtors' motion to assume. If, however, it is found to constitute a security device, the Court's order approving the debtors' assumption is without effect, and the debtors may modify this claim under applicable Chapter 12 provisions.

## II.

■■■ The Bankruptcy Code does not contain an explicit definition of the term "executory contract." Many courts, including the Seventh Circuit Court of Appeals, have adopted the Countryman definition as reflecting Congressional intent in enacting § 365. *See Streets and Beard*, 882 F.2d at 235; D. Epstein, S. Nickles, and J. White, Bankruptcy, § 5-4, at 442–444 (1992). Professor Countryman, noting that all contracts are by their nature "executory" as involving at least some unperformed obligations, concluded that, in a bankruptcy context, the term "executory contract" refers to

a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance by the other.

Countryman I, at 460.

Under this definition, there must be significant unperformed obligations on both sides for a contract to qualify as executory. Determination of the significance of the remaining obligations is made by looking to state law, as state law controls with regard to property rights in assets of a debtor's estate. *See In re Streets and Beard,* at 235.

The parties' agreement in this case provided for sale of the meat-processing business of Bill Smith "and the underlying assets of the business, including the real property on which the business is located" to the debtors. The property to be conveyed included

the goodwill of the business as a going concern, the business name ..., the current telephone number of the business ..., all of Seller's rights under existing contracts, licenses and permits, and all tangible property owned and used by Seller in [the] business[.]

The agreement allocated the purchase price of the business assets among equipment and a truck listed in an exhibit to the agreement; the land and buildings; and the goodwill, business name and phone number.

The agreement further provided for the proration of real estate taxes between the buyers and the seller, maintenance of insurance coverage by the buyers on both the real and personal property, and delivery of a title policy on the real estate by the seller upon completion of payments. The seller warranted that prior to the buyers' payment of the purchase price, he would pay in full a loan secured by the personal property of the business so that the property would be free of all encumbrances. In addition, the agreement provided that the seller would indemnify the buyers against any liabilities or claims asserted against the buyers by creditors of the seller, including any claims for taxes or other judgments arising out of the seller's operation of the business.

The parties' agreement specifically provided that the seller would "deliver possession

of the real and personal property being sold herein" upon the signing of the agreement. With regard to the delivery of title, the agreement provided for establishment of an escrow and stated that the seller would, upon execution of the agreement, deliver a deed to the real estate and a bill of sale conveying title to the personal property to an escrow agent with directions for their disposition upon the completion of payments.

■ Because the parties' agreement here involves the sale of both real and personal property, the Court must consider the parties' rights and obligations under an installment sale of both types of property. In *Streets and Beard*, the Seventh Circuit Court of Appeals ruled that, under Illinois law, an installment contract for the sale of real estate is in substance a security agreement and not an executory contract within meaning of § 365. *Id.* The court reasoned that, under the doctrine of equitable conversion applicable in Illinois, the debtor-purchaser in that case became the equitable owner of the subject real estate upon entry into the contract. As such, the debtor was entitled to possession of the property and was obligated to pay all relevant taxes and costs. In contrast, the only remaining obligation of the seller was to deliver legal title upon completion of the payments. The court concluded that, under this scenario, "the delivery of legal title is a mere formality and does not represent the kind of significant legal obligation that would render the contract executory." *Id.* As a result, the seller held legal title in trust solely as security for payment of the purchase price, and the contract, being a security agreement, was not executory under § 365. *Id.*

■ In this case, seller Bill Smith similarly holds legal title to the real estate on which the business is located solely as security for the debtors' payment of the purchase price. The deed to the real estate was placed in escrow and was to be delivered to the debtors upon their completion of payments under the contract, with the seller retaining title until this time. *See Fitch v. Miller*, 200 Ill. 170, 180–81, 65 N.E. 650 (1902); 17 Ill.L. & Prac., *Escrows*, § 3, at 644–45 (1956) (an instrument placed in es-

crow takes effect only from the time of its rightful delivery by the depository to the grantee or obligee). The debtors, however, took possession of the real estate upon the signing of the agreement and became responsible for payment of taxes and insurance at that time. While the seller retained his rights as legal title holder in the event of the debtors' default, the seller had no significant obligations with regard to the real estate and was required only to deliver good title, including a policy of title insurance, to the debtors upon payment of the purchase price. Under *Streets and Beard*, then, the parties' agreement does not constitute an executory contract under § 365 to the extent it involves the sale of real estate.

■ Although the decision in *Streets and Beard* was based on the Illinois doctrine of equitable conversion, which relates only to sales of real property, its reasoning is likewise applicable to the portion of the parties' agreement conveying personal property to the extent the agreement makes the delivery of title to the personal property a mere legal formality and leaves the seller with no significant obligations other than to deliver title. Transactions involving the sale of personal property or "goods" in Illinois are governed by the provisions of the Uniform Commercial Code. *See* 810 ILCS 5/2–101 *et seq.* Section 2–401(1) of the Code provides that while a seller of goods may retain title to such goods after delivery to the buyer, any such retention or reservation of title "is limited in effect to a reservation of a security interest." 810 ILCS 5/2–401(1). Section 1–201(37) defining "security interest" similarly provides that "[t]he retention or reservation of title by a seller of goods notwithstanding . . . delivery to the buyer . . . is limited in effect to a reservation of a 'security interest.' " 810 ILCS 5/1–201(37).

■ In this case, the parties' contract provided for physical delivery of the personal property of the business at the time the contract was signed. The contract did not contain an explicit statement regarding the reservation of title to these goods, but did provide for placing a bill of sale in escrow pending the buyers' completion of payments.

Since delivery of a document into escrow becomes effective only from the time of its second delivery to the obligee, *see Fitch v. Miller,* 200 Ill. at 181, 65 N.E. 650, this escrow provision amounted to a reservation of title in the seller. Under § 2–401, then, this retention of title by Bill Smith constitutes a security interest, and Bill Smith holds title to the personal property of the business merely as security for payment of the purchase price. *Cf. In re Hart,* 61 B.R. 135, 136 (Bankr.D.Or.1986) (seller's reservation of title under contract for sale of business property constituted security interest under § 2–401(1)).

▮▮▮ Bill Smith argues that § 2–401(1) is inapplicable in this case because the parties' contract involved not only the sale of personal property or goods but also intangible property such as goodwill, including the business name and phone number. The "goodwill" of a business may be defined as the advantage the business has over competitors as a result of its having been carried on in a particular place or by a particular person for a period of time. *Russell v. Jim Russell Supply, Inc.,* 200 Ill.App.3d 855, 861–62, 146 Ill.Dec. 152, 158, 558 N.E.2d 115, 121 (1990). While goodwill is an intangible asset, it cannot be separated from the tangible assets of the business and exists only as an incident of a going business. *See id.;* 30A Ill.L. & Prac., *Property,* § 41, at 192–93 (1994). Thus, in this case, the goodwill of the business was an incident of the tangible assets transferred—the assets to which the seller retained title pending the debtors' payment of the purchase price. Since the parties' transfer of these assets necessarily included the goodwill of the business, the parties' express inclusion of "goodwill" in the sales contract did not render the contract something other than a contract for sale of goods, that is, a contract to which § 2–401(1) is

applicable. For this reason, seller Bill Smith's contention is without merit and must be rejected.

▮▮▮ The Court finds that, by virtue of § 2–401(1), the parties' agreement conveying the personal property of the business, like the real estate contract in *Streets and Beard,* constitutes a security agreement rather than an executory contract under § 365.[4] An analysis of the contract provisions reinforces the conclusion that Bill Smith has no significant remaining obligations under the contract other than delivery of legal title. The parties' contract contains requirements for the seller to remove an existing encumbrance on the personal property before completion of payments by the debtors and to indemnify the debtors for any liabilities that might arise from the seller's operation of the business. The former obligation—to pay off the loan secured by the personal property—is merely part of the seller's obligation to deliver good title and does not constitute a separate material obligation that would render the contract executory. The latter obligation—to indemnify the debtors for loss resulting from the seller's actions—provides the debtors an important right in the event of a future claim. However, a breach of that obligation would not be a material breach justifying rescission of the contract but would afford the debtors a claim for money damages against the seller. *See* 12A Ill.L. & Prop., *Contracts,* § 375, at 213–14 (1983) (rescission, under Illinois law, is an extreme right and will not be allowed for breach of an independent provision which is incidental to the main purpose of the contract). Since the seller's failure to fulfill this obligation would not excuse the other's party's performance, this obligation is insufficient under the Countryman definition to render the parties' contract executory.

---

**4.** It is instructive to compare this case with *In re Bencker,* 122 B.R. 506 (Bankr.W.D.Mich.1990), in which the court found that a contract for sale of a mobile home was an executory contract after determining, under § 2–104(2), that the seller retained legal title pending completion of payments by the buyers. Like this Court, the *Bencker* court analogized from a higher court's decision dealing with a contract for sale of real estate in considering whether the contract before it for

sale of personal property was executory. However, the higher court in *Bencker,* the Sixth Circuit Court of Appeals, reached the opposite conclusion regarding the executory nature of a contract for sale of real estate than the Seventh Circuit Court of Appeals in *Streets and Beard,* ruling that an executory contract existed when it remained for the seller to pass legal title upon completion of the buyers' payments. *See In re Terrell,* 892 F.2d 469, 472 (6th Cir.1989).

A contract under which no remaining obligation is due other than the payment of money is not executory under § 365. The debtors here are in possession of the meat-processing business with the attendant obligations of maintaining insurance and paying taxes. The seller has no significant unperformed obligations that would render the contract executory but rather holds title to the real and personal property as security for the debtors' payment of the remainder of the purchase price.

For the reasons stated, the Court holds that the parties' contract constitutes a security agreement rather than an executory contract subject to assumption or rejection under § 365. Bill Smith has a secured claim against the debtors' estate, which the debtors may modify pursuant to applicable Chapter 12 provisions. Accordingly, Bill Smith's objection to confirmation of the debtors' plan is overruled.