**In re Joyce VINSON, Debtor.**

**Bankruptcy No. 96–40820.**

United States Bankruptcy Court, S.D. Illinois.

Dec. 3, 1996.

---

Robert P. Schulhof, Carbondale, IL, for May and Henry Jin.

Michael Katz, Collinsville, IL, for debtor.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

At issue in this case is whether an installment contract for the sale of commercial real estate to the debtor is an executory contract which must be assumed or rejected under 11 U.S.C. § 365 or whether, under the Seventh Circuit's ruling in *In re Streets & Beard Farm Partnership,* 882 F.2d 233, 235 (7th Cir.1989), it constitutes a financing device granting the sellers a secured claim which may be dealt with in the debtor's Chapter 13 plan. The contract sellers, having filed a motion to require the debtor to assume or reject the contract as executory, assert that the present case is distinguishable from *Streets & Beard,* in which the court held that an installment contract for the sale of real estate in Illinois is essentially a security agreement. They contend that the Illinois doctrine of equitable conversion, upon which *Streets & Beard* was premised, is not applicable in this case because the contract here expressly provided that title would be reserved in the sellers until the purchase price was paid in full and because, at the time of the debtor's bankruptcy filing, there had been insufficient payments under the contract for the debtor to have any equity in the real estate.

The facts are undisputed. On July 10, 1996, Joyce Vinson ("debtor") filed for relief under Chapter 13 and scheduled as a secured debt the amount owing on a real estate installment contract with the sellers, Henry and May Jin. At the time of her bankruptcy filing, the debtor had made only two monthly payments of $2,000 each under the contract dated February 1996 and was three months, or $6,000, in arrears on her payments toward the purchase price of $180,000. Under the contract, interest at 10% was payable on the contract balance, and payments were to be applied first to interest and then to unpaid principal. Thus, at the time of filing, the debtor had little, if any, equity in the purchase price of the property subject to the contract.[1]

Paragraph 3 of the contract expressly provided that "[b]oth legal and equitable title in the property shall be reserved by the seller[s] until the purchase price is fully paid and this contract fully performed by the buyer."

---

1. The contract did not require a down payment toward the purchase price. Rather, it provided for monthly payments of $2,000 for 12 months, followed by a lump sum payment of $20,000 in February 1997 and, thereafter, 96 monthly payments of $2,336.83. *See* Install. Sales Contr., par. 2, attach. Jins' Mot. to Req. Assum. or Rej. of Contr., filed Aug. 5, 1996.

The sellers were to provide the buyer with a title policy commitment showing merchantable title within 30 days after execution of the contract and were to effect the release of a mortgage on the property in February 1997 upon the debtor's lump sum payment of $20,000. In addition, the contract provided that a warranty deed from the sellers would be placed in escrow with directions for its delivery to the buyer.

The debtor, as buyer under the contract, was responsible for all taxes and assessments against the property and was required to provide insurance. In addition, the debtor was responsible for maintenance of the property during the life of the contract. The contract expressly prohibited the debtor from doing anything that would cause a mechanic's lien to attach to the sellers' interest and stated that persons performing work for the buyer were to look solely to the buyer rather than to the sellers of the real estate. Finally, the contract provided that the debtor, who had been in possession of the property during the preceding year, was responsible for payment of all utility charges.

Following the debtor's bankruptcy filing, the sellers filed a motion to require the debtor to assume or reject the contract as executory under 11 U.S.C. § 365. The debtor objected to this motion, arguing that since nothing remains to be done by the parties except payment by the debtor and delivery of title by the sellers, the contract is not executory and constitutes nothing more than a security agreement giving the sellers a secured claim in the debtor's bankruptcy proceeding.[2]

Section 365, providing for the assumption or rejection of executory contracts,[3] allows a trustee or debtor in possession to accept the benefits of an advantageous contract by assuming it or to be relieved of the obligations of a burdensome contract by rejecting it. *In re Fitch,* 174 B.R. 96, 100 (Bankr.S.D.Ill.1994). By its terms, § 365 applies only to "executory" contracts—those contracts on which performance remains due to some extent on both sides. *See Streets & Beard Farm Partnership,* 882 F.2d at 235. The Bankruptcy Code does not contain an explicit definition of the term "executory contract," and many courts, including the Seventh Circuit Court of Appeals, have adopted the so-called Countryman definition as reflecting Congressional intent in enacting § 365.[4] *Fitch,* at 101. Under this definition, there must be significant unperformed obligations on both sides for a contract to qualify as executory. Determination of the significance of the remaining obligations is made by looking to state law, as state law controls with regard to property rights in assets of a debtor's estate. *Id.*

In *Streets & Beard,* the Seventh Circuit Court of Appeals ruled that under Illinois law, an installment contract for the sale of real estate was in substance a security agreement and not an executory contract within

2. The debtor's first amended Chapter 13 plan treats the contract obligation as a secured claim on long-term debt subject to 11 U.S.C. § 1322(b)(5), which allows the debtor to cure any default and maintain payments on any claim "on which the last payment is due after the date on which the final payment under the plan is due." The debtor thus proposes to cure the arrearage under the contract by making payments to the trustee pro rata with other secured claims and to maintain payments on the contract in accordance with its terms during the life of the plan. *See* 11 U.S.C. § 1322(b)(5).

3. Section 365 states, with specified exceptions, that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

4. Professor Countryman, noting that all contracts are by their nature "executory" as involving at least some unperformed obligations, concluded that, in a bankruptcy context, the term "executory contract" refers to

a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance by the other.

V. Countryman, Executory Contracts in Bankruptcy Part I, 57 Minn.L.Rev. 439, 450–52 (1973).

the meaning of § 365. *See Streets & Beard,* at 235. The court reasoned that, under the doctrine of equitable conversion applicable in Illinois, the debtor-purchaser in that case became the equitable owner of the subject real estate upon entry into the contract. As such, the debtor was entitled to possession of the property and was obliged to pay all relevant taxes and costs. In contrast, the only remaining obligation of the seller was to deliver legal title upon completion of the payments. The court concluded that, under this scenario, "the delivery of legal title is a mere formality and does not represent the kind of significant legal obligation that would render the contract executory." *Id.* As a result, the seller held legal title in trust solely as security for payment of the purchase price, and the contract, being a security agreement, was not executory under § 365.

The sellers in this case argue that *Streets & Beard* is not controlling here because the provision reserving both legal and equitable title in the sellers renders this contract an exception to the doctrine of equitable conversion upon which *Streets & Beard* was premised. In support of their argument that no equitable conversion occurred, they cite *Eade v. Brownlee,* 29 Ill.2d 214, 193 N.E.2d 786 (1963), in which the Illinois Supreme court, construing a similar contract provision reserving title in the seller,[5] noted that the doctrine of equitable conversion does not apply where equitable considerations intervene or where the parties intend otherwise. *Eade,* 193 N.E.2d at 788. The *Eade* court, finding that the provision in question clearly expressed the parties' intent, ruled that no equitable title had passed to the purchasers under the doctrine of equitable conversion. *Id.* 193 N.E.2d at 789.

While the *Eade* court used strong language in giving effect to the provision reserving equitable title in the sellers,[6] the court's ruling was based on the facts of that case and must not be applied in a blanket fashion to cases, such as the present one, involving far different facts. *See Cox v. Supreme Savings and Loan Ass'n,* 126 Ill.App.2d 293, 262 N.E.2d 74, 77 (1970). The issue in *Eade* was whether third-party mortgagees of the purchaser could, after forfeiture had been declared, pay off the contract and foreclose mortgages incurred for improvements to the property under the theory that the purchaser was the equitable owner and had the right to mortgage the property. The *Eade* court, noting that the doctrine of equitable conversion was evolved to affect the rights of parties to the contract rather than the rights of third parties, refused to allow the mortgagees to enforce rights against the seller after forfeiture had been declared. *See Eade,* 193 N.E.2d at 788 (quoting *First Nat'l Bank of Highland Park v. Boston Ins. Co.,* 17 Ill.2d 147, 160 N.E.2d 802, 804 (1959)). In addition, the court considered the cost and quality of the improvements made to the property and found them to be "shoddy improvements at a ridiculous cost." 193 N.E.2d at 790. Under these facts, the court found no basis to invoke the doctrine of equitable conversion for the benefit of the mortgagees. Thus, the court essentially held that the doctrine of equitable conversion would not be used to bring about an inequitable result. *Cox,* 262 N.E.2d at 77.

By contrast, the court in *Cox* construed a contract containing an identical provision reserving title in the seller and found, based on the language and the conduct of the parties to the contract, that equitable conversion had, in fact, occurred. *Id.* 262 N.E.2d at 79. Although the provision reserving title stated that no equitable title would pass until payments had been completed, the court looked to other provisions giving the purchasers all

---

**5.** The contract in *Eade* provided that "no right, title or interest, legal or equitable, in the premises aforesaid, or any part thereof, shall vest in the purchaser until the delivery of the deed aforesaid by the seller, or until the full payment of the purchase price at the times and in the manner herein provided." 193 N.E.2d at 789.

**6.** The court stated that "[u]nder this clause alone, the claim of equitable title in the purchaser ... is wholly defeated." *Eade,* 193 N.E.2d at 789.

the rights and responsibilities of an owner, including the right to lease the property and collect rents and the responsibility for taxes, insurance, and repair of the premises. *Id.* 262 N.E.2d at 75, 77. The court, observing that nothing remained to be done under the contract except for the buyers to complete payments and the seller to deliver its warranty deed, ruled that the provision reserving equitable title in the seller was nullified by these other provisions allowing the purchasers to exercise the prerogatives of ownership.

The *Cox* court distinguished the case of *City of Chicago v. Mandoline,* 26 Ill.App.2d 480, 168 N.E.2d 784 (1960), where an installment contract which, among other things, required the purchaser to submit to the seller every contract, together with plans, for any improvements to the premises was found to be so restrictive that all the purchaser received was the right to occupy the premises so long as he made the required payments. *See* 168 N.E.2d at 786. Since the purchasers in *Cox* enjoyed all the rights of an owner and were prohibited only from making major changes to the property without authority of the seller, the court found that it would be "fictional rather than factual" to hold that the purchasers had only a possessory interest in the property. *Cox,* 262 N.E.2d at 79.

■ The present case is similar to *Cox* in that the contract here provides for the debtor-purchaser to exercise all the rights and perform all the duties of an owner, subject only to obtaining approval of the sellers before making major changes to the property. The parties' contract precludes the debtor from removing any building or improvement from the property or conveying any interest without the sellers' consent. However, outside of these limitations, the debtor has complete control of the property. In addition, the debtor is responsible for all maintenance of the property and for the payment of taxes, insurance, and utilities. Like the purchasers in *Cox,* the debtor here clearly has more than a possessory right in the premises. Thus,

while the provision reserving title in the sellers purports to express the parties' intent regarding their respective interests in the property, this intent is more plainly manifested by the remainder of the contract giving the debtor the rights and responsibilities of an owner of the property.

■ The doctrine of equitable conversion, premised on the equitable principle that "equity regards as done that which ought to be done," was designed to accomplish the intent of parties to a contract and ensure justice where technical rules of law might prevent it. *Cox,* 262 N.E.2d at 76; *see Shay v. Penrose,* 25 Ill.2d 447, 185 N.E.2d 218, 220 (1962). Ironically, the provision at issue in this case, if taken at face value, would prevent application of this equitable doctrine and defeat the parties' intent as evidenced by other provisions of the contract giving the debtor an ownership interest in the subject property. The Court finds, therefore, that the provision reserving equitable title in the sellers until completion of payments by the debtor is contrary to the parties' intent as manifested by the remainder of the contract. Accordingly, based on the reasoning of *Cox,* this provision was effectively nullified by other provisions of the contract and did not operate to prevent the vesting of equitable title in the debtor under the doctrine of equitable conversion.

■ The Court finds without merit the sellers' remaining contention that equitable conversion should not apply here because, at the time of the debtor's bankruptcy filing, she had made so few payments under the contract that she had no equity in the purchase price of the property. Equitable conversion takes place at the time a valid and enforceable contract for the sale of real estate is entered into and does not depend upon the length of time the contract has to run or the amount of money already paid on the contract. *Shay v. Penrose,* 185 N.E.2d at 220. As noted in *Shay,* contracts for the sale of real estate are useful and commonly employed devices for transferring property in our society, and sellers voluntarily enter-

ing into such contracts are deemed to know the legal implication of their acts. To base application of the doctrine of equitable conversion on the flexible element suggested by the sellers here "would leave titles in an utter state of confusion." *Shay*, 185 N.E.2d at 220. The sellers' argument regarding the debtors' lack of equity in the property is, therefore, without support under Illinois law and must be rejected.

Under the doctrine of equitable conversion applicable in this case, the debtor became the equitable owner of the subject property upon entry into the contract. As such, she is responsible for making the payments called for under the contract, and the sellers hold legal title in trust as security for such payment. *See Streets & Beard*, 882 F.2d at 235. The sellers have no remaining obligations under the contract except for the delivery of legal title upon completion of the debtor's payments.[7] The Court finds, therefore, that rather than constituting an executory contract that must be assumed or rejected by the debtor, the parties' contract is a financing arrangement whereby the sellers hold legal title as security for the debtor's payment of the purchase price. *Streets & Beard*.

For the reasons stated, the Court finds that the sellers' motion to require the debtor to assume or reject the contract as executory must be denied.

---

7. The sellers have presumably complied with their obligation to provide a title policy commitment showing merchantable title within 30 days of entering into the contract and to place in escrow a warranty deed conveying the property to the debtor. While the contract further provides for the sellers to effectuate the release of a mortgage on the property when the debtor makes a lump sum payment in February 1997, this is merely part of the process of delivering good title to the premises and does not constitute a significant obligation on behalf of the sellers that would render the contract executory under § 365.