**In re Darrell L. GROFF Donna R. Groff, Debtors.**

**Bankruptcy No. 97–60815.**

United States Bankruptcy Court, S.D. Illinois.

Aug. 7, 1998.

Michael Curry, Office of William Mueller, Mt. Vernon, IL, for Debtors.

Murphy Hart, Benton, IL, for St. Mary's Hospital.

**698**

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

In this chapter 13 proceeding, the debtors are purchasing a residence in Marion County, Illinois, under an installment agreement for warranty deed (hereafter "contract") and seek to avoid judicial liens of St. Mary's Hospital (hereafter "St. Mary's") under § 522(f)(1)(A) of the Bankruptcy Code[1] as impairing their Illinois homestead exemption. At issue is whether the installment contract is an executory contract under which the debtors, as purchasers, have no legal or equitable interest in real estate to which judicial liens can attach, or whether it constitutes a financing device vesting equitable title in the debtors that can be encumbered by judicial liens subject to avoidance under § 522(f)(1)(A).[2]

■ St. Mary's contends that the debtors have yet to acquire a real property interest in their residence to which judicial liens could attach. It asserts that the present case is distinguishable from *In re Vinson*, 202 B.R. 972 (Bankr.S.D.Ill.1996), in which this Court followed the Seventh Circuit's ruling in *In re Streets & Beard Farm Partnership*, 882 F.2d 233 (7th Cir.1989), and held that an installment contract for the sale of real estate in Illinois is essentially a security agreement under which the purchaser takes equitable title at the time of entering into the contract.

Relying on certain terms of the contract, St. Mary's argues that this particular land sale installment contract is an executory contract and that the Illinois doctrine of equitable conversion, upon which *Streets & Beard* and *Vinson* were premised, is not applicable. The debtors, however, contend that upon execution of the contract, they were vested with a real property interest[3] in their residence and that St. Mary's recording of memoranda of judgment created judicial liens upon their residence that they may now avoid.

The facts are not disputed. The debtors entered into the land sale contract on February 27, 1991, and the contract was filed for record in the office of the County Clerk and Recorder for Marion County on December 3, 1991. During 1993 and 1994, St. Mary's filed for record, in the same office, memoranda of judgment against the debtors totaling $13,941.47. The debtors filed a petition for relief under chapter 13 of the Bankruptcy Code on September 19, 1997, and jointly claimed a $15,000 exemption in their residence. The residence is valued at $7,000 on the debtors' schedules. At the time of the bankruptcy filing, a balance of $3,000 remained owing to the sellers on the contract purchase price. St. Mary's, on February 18, 1998, filed two proofs of claim classifying the obligations at issue as secured debt.[4] As proof of its secured status, St. Mary's attached the recorded memoranda of judgment to the respective

---

1. This section provides in pertinent part that:
   (f)(1) ... the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ..., if such lien is–
      (A) a judicial lien ....
   11 U.S.C. § 522(f)(1)(A).

2. The Court questions whether it is necessary to determine that the debtors have an equitable interest in this real estate in order to avoid the creditor's lien under § 522(f)(1)(A), as some courts have held that it is sufficient to trigger a debtor's avoiding power under § 522(f) if the debtor has a possessory interest only. *See* H.R.Rep. No. 103–835, at 52, reprinted in 1994 U.S.C.C.A.N. 3340, at 3361; *see also In re Van-Zant*, 210 B.R. 1011, 1015–16 (Bankr.S.D.Ill. 1997). There is no dispute that the debtors here possess the subject real estate. However, the parties have not addressed this issue and it would not alter the result in this case. The

Court, therefore, declines to consider the issue further.

3. The debtors appear confused about the concept of equitable conversion, citing *Streets & Beard* and *Vinson* for the mistaken notion that equitable conversion endows a purchaser under a land sale installment contract with legal title in real estate. Accordingly, the debtors assert that they hold a legal interest in the residence, allowing them to avoid St. Mary's judicial liens. Conversely, they argue that were they to hold equitable title only, they would be unable to avoid the judicial liens. Although the debtors misstate the impact of the doctrine, the Court construes the thrust of their argument to be that they have an interest in real estate within the meaning of § 522(f)(1)(A).

4. St. Mary's filed another proof of claim on September 29, 1997, for an unsecured debt. That obligation is not at issue here.

proofs of claim. On February 27, 1998, the debtors filed two motions seeking to avoid St. Mary's liens.

Under the contract, the debtors were given possession of the residence upon execution of the contract, and the sellers agreed to convey the real estate to the debtors by warranty deed upon completion of all payments under the contract. The contract expressly provides that "[n]o right, title or interest, legal or equitable, in the premises, or any part thereof, shall vest in Purchaser until the delivery of the deed aforesaid by Seller, or until the full payment of the purchase price at the times and in the manner herein provided."

The debtors are responsible for maintenance of the property during the life of the contract, and may improve the property, but must provide the sellers with a signed copy of every contract for work to be done, along with plans and specifications, and must obtain lien waivers or releases from all parties contracting to work on the property. The contract expressly prohibits the debtors from doing anything to cause a mechanic's lien, or any other lien that could be superior to the rights of the sellers, to attach to the property. It also restricts the debtors from assigning the contract or from leasing the premises to another party without the sellers' consent.

Finally, the debtors are responsible for all taxes and assessments against the real estate and are required to insure the residence. In addition, the contract required the contracting parties to pro rate "[r]ents, water[,] taxes, insurance premiums and other similar items" as of the date the debtors took possession of the premises.

In *Streets & Beard*, 882 F.2d at 235, the Seventh Circuit ruled that under Illinois law, an installment contract for the sale of real estate was in essence a security agreement and not an executory contract.[5] The purchaser in that case was in possession of the property and obliged to pay all relevant taxes and costs, while the seller's only remaining obligation was a mere formality—to deliver legal title upon completion of payments by the purchaser. *Id.* The court reasoned that, under the doctrine of equitable conversion applicable in Illinois,[6] the purchaser became the equitable owner of the subject real estate upon entry into the contract, with the seller holding legal title in trust solely as security for payment of the purchase price. *Id.*

This Court reached the same conclusion after analyzing the terms of the land sale installment contract presented in the *Vinson* case. In *Vinson*, the contract reserved legal and equitable title in the sellers pending completion of all installment payments, yet provided for the purchaser to exercise all the rights and perform all the duties of an owner, subject only to obtaining approval of the sellers before making major changes to, or conveying any interest in, the property. Additionally, the purchaser was responsible for all maintenance of the property and for the payment of taxes, insurance, and utilities. *In re Vinson*, 202 B.R. at 976. In contrast, the sellers had no remaining obligations under the contract other than delivery of legal title upon completion of the purchaser's payments. *Id.* at 977. Given the purchaser's virtually unfettered control of the property,

---

**5.** The Bankruptcy Code does not expressly define the term "executory contract," and many courts, including the Seventh Circuit Court of Appeals, have adopted the so-called Countryman definition of the term. *In re Vinson*, 202 B.R. at 974 (citing *Streets & Beard Farm Partnership*, 882 F.2d at 235; *In re Fitch*, 174 B.R. 96, 101 (Bankr.S.D.Ill.1994)). Under this definition, there must be significant unperformed obligations on both sides for a contract to be considered executory. *Id.* The significance of the remaining obligations is determined by looking to state law. *Id.*

**6.** The doctrine of equitable conversion, premised on the equitable principle that "equity regards as done that which ought to be done," was designed

to accomplish the intent of parties to a contract and ensure justice where technical rules of law might prevent it. *In re Vinson*, 202 B.R. at 976 (quoting *Cox v. Supreme Sav. & Loan Ass'n*, 126 Ill.App.2d 293, 262 N.E.2d 74, 76 (1970); *Shay v. Penrose*, 25 Ill.2d 447, 185 N.E.2d 218, 220 (1962)). Under the doctrine, land is treated as personalty and personalty as land, with the conversion occurring at the time of entering into the contract. *Shay v. Penrose*, 185 N.E.2d at 219–20. Thus, upon entry into an installment contract for the sale of land, the seller continues to hold the legal title in trust for the purchaser, and the purchaser becomes the equitable owner holding the purchase money in trust for the seller. *Id.*

the Court nullified the impact of the provision reserving equitable title in the sellers and held that the parties' intent was more plainly manifested by the remainder of the contract giving the purchaser the rights and responsibilities of ownership. *Id.* at 976. As a result, the doctrine of equitable conversion was applicable, with the purchaser becoming the equitable owner upon entry into the contract and the sellers retaining legal title as security for payment of the purchase price. *Id.* at 976–77.

St. Mary's argues that *Streets & Beard* and *Vinson* are not controlling here because certain contractual provisions render this contract executory and the doctrine of equitable conversion inapplicable. Comparing the contract at hand to that described in *City of Chicago v. Mandoline*, 26 Ill.App.2d 480, 168 N.E.2d 784 (1960), St. Mary's contends that the sellers here, but for the right to occupy the residence, remain in virtual control of the property and that, until all executory provisions are completed, the debtors have no legal or equitable interest in the real estate.

*City of Chicago v. Mandoline* arose as a quasi-criminal proceeding for violation of municipal ordinances brought by the City of Chicago against both the seller and purchaser of a building sold under a land sale installment contract. In that case, the seller appealed from a guilty conviction and a $1,000 fine assessed against him, but not against the purchaser of the property, arguing that the wrong defendant had been found liable. *Id.*, 168 N.E.2d at 785.

Under the facts in *Mandoline*, the purchaser had taken possession shortly after execution of the contract and, only a few weeks later, the City inspected the building and found numerous ordinance violations. *Id.* The contract between the seller and purchaser in *Mandoline* reserved legal and equitable title in the seller; required the purchaser to submit every contract and plans for improvements to the seller; and restricted the purchaser from recording the contract to show his interest, from subletting the premises without the seller's permission, and from making any repair that would constitute a lien on the premises. *Id.* at 786. Based on

these facts, the appellate court concluded that the purchaser was given no control of the premises, receiving only the right to occupy the premises as long as he made the monthly payments, while the seller was the record owner of the building, as well as the party in complete control of the premises to the exclusion of the purchaser. *Id.; see City of Chicago v. North End Bldg. Corp.*, 34 Ill.App.2d 306, 180 N.E.2d 726, 728 (1962). Applying a municipal ordinance that assessed liability against "the owner ... and any other person managing or controlling a building or premises ...," *Mandoline*, 168 N.E.2d at 785–86, the appellate court affirmed the guilty verdict against the seller. *Id.* at 786.

In drawing a comparison between the *Mandoline* contract and the contract at bar, St. Mary's points to provisions in the instant contract that reserve legal and equitable title in the sellers; that require the debtors to provide the sellers with a signed copy of every contract, together with plans and specifications, for work to be done to repair or improve the property; that require the debtors to obtain lien waivers or releases from all parties contracting to work on the property and to refrain from any action that would cause a mechanic's lien, or any other lien that could be superior to the rights of the sellers, to attach to the property; and that require the debtors to forebear from assigning the contract or leasing the premises to another party without the sellers' consent. St. Mary's asserts that these provisions show that equitable conversion did not occur upon execution of the contract because the intent of the contracting parties was otherwise.

The Court finds the comparison with *Mandoline* unpersuasive. Initially, it is telling that St. Mary's chooses to compare the contract in this case to that in *Mandoline* while failing to distinguish it from the contracts set forth in *Streets & Beard* and *Vinson*. Despite St. Mary's efforts to characterize the contract as executory, the sellers in this case, as in *Streets and Beard* and *Vinson*, have no obligations to perform other than to deliver the deed upon full payment of the purchase price. The debtors, on the other hand, exercise all the rights and perform all the duties of an owner, subject only to minimal restric-

tions. The debtors are required to maintain and repair the residence and may make improvements to it without obtaining the sellers' consent. Although they must provide the sellers with copies of any contracts, plans, and specifications for repairs or improvements, the sellers are given no veto power under the land sale contract and are entitled only to receive contracts which, having been fully executed, are *faits accomplis.* In addition, the debtors are responsible for payment of taxes and assessments, insurance, water, and other similar items[7] and may collect rents. Unlike the *Mandoline* purchaser, the debtors are not restricted from recording the contract, and it has, in fact, been recorded.

Finally, as in *Vinson,* the purchasers may not convey any interest without the sellers' consent,[8] *see Vinson,* 202 B.R. at 976, and are expressly prohibited from doing anything that would cause a mechanic's lien, or other lien superior to the sellers' rights, to attach to the property. *See id.* at 974.[9] However, outside of these limitations, the debtors have complete control of the property. See *id.* at 976. Like the purchaser in *Vinson,* they clearly have more than a possessory right in the premises. *See id.* While the provision reserving title in the sellers until completion of all payments purports to express the parties' intent regarding their respective interests in the property, the Court finds that this intent is more plainly manifested by the remainder of the contract giving the debtors the rights and responsibilities of ownership. *See id.* Therefore, the provision reserving equitable title in the sellers is nullified by other provisions of the contract and does not operate to prevent the vesting of equitable title in the debtors under the doctrine of equitable conversion. *See id.*

The *Mandoline* case is distinguishable from the instant situation, moreover, because it arose in a different context altogether and was based on the facts of that case. Its ruling must not be applied in a blanket fashion to cases, such as the present one, involving far different facts. *See id.* at 975. The issue in *Mandoline* was whether the seller of a building should be held criminally responsible for code violations under an ordinance assessing liability against the owner and any person in control of the building. The appellate court affirmed the guilty verdict against the seller both because he was the sole owner of record, having forbidden the purchaser from recording his interest, and because the provisions of the contract gave him complete control of the premises to the exclusion of the purchaser. *See North End Building Corp.,* 180 N.E.2d at 728. Either factor alone would have been sufficient to uphold the determination of liability against the seller, and the court's focus was on the fairness of the verdict rather than on the respective property interests of the contracting parties.

■ In addition, as an equitable concept designed to accomplish the intent of contracting parties and to ensure justice where technical rules of law might prevent it, *In re Vinson,* 202 B.R. at 976, the doctrine of equitable conversion may not be used affirmatively or defensively by strangers to the contract to bring about an inequitable result. *See id.* at 975. In this case, after the debtors' interest in the residence was recorded, St. Mary's recorded memoranda of judgment against the debtors in the real estate records. Subsequently, it filed proofs of claim in the debtors' bankruptcy proceeding alleging that the debts owed it were secured as a result of the recorded memoranda of judgment. However, despite having clouded title to the residence, and having previously asserted secured claims in the bankruptcy case, it now contends that no liens exist to be avoided

---

**7.** The contract provides that payment of the enumerated items and "other similar items" is the responsibility of the purchasers upon possession. The Court assumes that utilities other than water fall within this catch-all phrase since the contract does not address the subject elsewhere.

**8.** The debtors must obtain the approval of the sellers before assigning the contract or leasing the premises.

**9.** The Court is not convinced that these restrictions distinguish this contract from a mortgage or other financing agreement in any event, since mortgages typically include prohibitions against assignment, lease, and encumbrance of the premises without the lender's consent.

since the debtors have no interest in real estate to which liens could attach. The Court is not persuaded by St. Mary's disingenuous argument. For this, and the other reasons set forth above, the Court finds that the debtors have an equitable interest in their residence to which St. Mary's judicial liens have affixed.

■ The final issue, then, for the Court to decide is whether St. Mary's judicial liens impair the debtors' homestead exemption, for a lien may be avoided under § 522(f)(1)(A) only to the extent that it impairs an exemption to which the debtors are entitled. 11 U.S.C. § 522(f)(1)(A). Section 522(f)(2)(A) of the Bankruptcy Code provides the formula to be applied in determining whether a lien impairs an exemption. It states in pertinent part that:

(2)(A) ... a lien shall be considered to impair an exemption to the extent that the sum of–

(i) the lien,

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

The debtors in this case, without contest, place a value of $7,000 on their residence and still owe approximately $3,000 to the contract sellers. St. Mary's judicial liens total $13,941.47, and the debtors jointly claim a $15,000 homestead exemption. Based on these figures, application of the formula reveals that the debtors' homestead exemption is impaired by St. Mary's judicial liens, which, therefore, are subject to avoidance in their entirety.

For the reasons stated, the Court will grant the debtors' motions to avoid the judicial liens of creditor, St. Mary's Hospital.